## WILSON *v.* ISEMINGER.

ERROR TO THE SUPREME COURT OF THE STATE OF PENNSYLVANIA.

No. 193. Argued March 19, 1902.—Decided April 7, 1902.

The seventh section of the act of Pennsylvania of April 27, 1855, is as follows: "That in all cases where no payment, claim, or demand shall have been made on account of or for any ground rent, annuity, or other charge upon real estate for twenty-one years, or no declaration or acknowledgment of the existence thereof shall have been made within that period by the owner of the premises, subject to such ground rent, annuity, or charge, a release or extinguishment thereof shall be presumed, and such ground rent, annuity, or charge shall thereafter be irrecoverable: *Provided*, That the evidence of such payment may be perpetuated by recording in the recorder of deeds' office of the proper county the duplicate of

any receipt therefor, proved by oath or affirmation to be a true copy of that signed and delivered in the presence of the payer and witnessed at the time by this deponent, which recorded duplicate or the exemplification of the record thereof shall be evidence until disproved; and the evidence of any such claim or demand may be perpetuated by the record of any judgment recovered for such rent, annuity, or charge in any court of record, or the transcript therein filed of any recovery thereof by judgment before any alderman or justice of the peace, which record and judgment shall be duly indexed: *Provided*, That this section shall not go into effect until three years from the passage of this act." *Held*, that this was not an act or law impairing the obligation of contracts within the meaning of the Constitution of the United States.

This was an action of assumpsit brought December, 1896, in the Court of Common Pleas, No. 1, of Philadelphia County, by Harvey G. Clay, administrator of the estate of Alexander Osbourne, deceased, against Adam Iseminger, for recovery of arrears of ground rent due on a ground-rent deed between Alexander Osbourne and Jennie M., his wife, and the said Adam Iseminger, dated January 4, 1854. The statement of particulars claimed arrears of ground rent due, under the stipulations of said deed, for the years 1887 to 1896, both inclusive, with interest on each arrear.

On January 27, 1897, one Elmer H. Rogers, having been permitted, as terre-tenant and owner in fee of the lot of ground described in the ground-rent deed, to intervene and defend *pro interesse suo*, filed, under the rules of the court, an affidavit of defence to the whole of the plaintiff's claim, averring that no payment, claim or demand had been made by any one on account of or for any ground rent on the premises described in the said deed, or from any owner of said premises, or any part thereof, for more than twenty-one years prior to the bringing of the suit; that no declaration or acknowledgment of the existence thereof, or of the right to collect said ground rent thereon, had been made within that period by or for any owner of said premises, or any part thereof, and that neither he nor they nor any of them within that period ever executed any declaration of no set-off in reference to said ground rent, or recognized its existence in any way, manner, shape or form.

This defence was based on the seventh section of an act of the

Commonwealth of Pennsylvania of April 27, 1855, page 368, No. 387, in terms as follows :

" That in all cases where no payment, claim or demand shall have been made on account of or for any ground rent, annuity or other charge upon real estate for twenty-one years, or no declaration or acknowledgment of the existence thereof shall have been made within that period by the owner of the premises subject to such ground rent, annuity or charge, a release or extinguishment thereof shall be presumed, and such ground rent, annuity or charge shall thereafter be irrecoverable : *Provided,* That the evidence of such payment may be perpetuated by recording in the recorder of deeds' office of the proper county the duplicate of any receipt therefor, proved by oath or affirmation, to be a true copy of that signed and delivered in the presence of the payer and witnessed at the time by this deponent, which recorded duplicate or the exemplification of the record thereof, shall be evidence until disproved, and the evidence of any such claim or demand may be perpetuated by the record of any judgment recovered for such rent, annuity or charge in any court of record, or the transcript therein filed of any recovery thereof by judgment before any alderman or justice of the peace, which records and judgments shall be duly indexed : *Provided,* That this section shall not go into effect until three years from the passage of this act."

Thereupon the plaintiff took out a rule on the defendant to show cause why judgment should not be entered against him for want of a sufficient affidavit of defence, assigning as a reason why such rule should be made absolute that the said seventh section of the act of April 27, 1855, was unconstitutional within the tenth section of article 1 of the Constitution of the United States, forbidding any State from passing any law impairing the obligation of contracts.

After a hearing the court discharged the said rule for judgment ; a bill of exceptions was signed and sealed, and the cause was then taken to the Supreme Court of Pennsylvania, where the judgment of the Court of Common Pleas was affirmed. 187 Penn. St. 108.

Thereafter the case came on for trial before the court and a

jury. The plaintiff offered evidence tending to show that the ground rent in question had never been paid off and extinguished. This offer was objected to as immaterial and irrelevant. The objection was sustained, and an exception was taken by the plaintiff. The court was asked to instruct the jury that the seventh section of the act of April 27, 1855, was unconstitutional, because it impairs the contract reserving the rent, and was inhibited by the tenth section of article 1 of the Constitution of the United States, which forbids the States from passing any law impairing the obligation of contracts. The request so to charge was refused by the trial judge. The defendants asked the court to charge that the verdict should be for the defendants. This request was granted. A bill of exceptions to the action of the court in rejecting the plaintiff's offer of evidence, in declining to charge as requested by the plaintiff, and in charging as requested by the defendant, was signed and sealed by the trial court. A verdict and judgment in favor of the defendants were then entered. The cause was then taken a second time to the Supreme Court of Pennsylvania, where on April 3, 1899, the judgment of the Court of Common Pleas was affirmed.

*Mr. George Henderson* for plaintiff in error.

*Mr. Ira Jewell Williams* for defendant in error. *Mr. Alexander Simpson, Jr.,* was on his brief.

Mr. JUSTICE SHIRAS, after making the above statement, delivered the opinion of the court.

The question for determination in this case is whether the seventh section of the act of assembly of the Commonwealth of Pennsylvania of April 27, 1855, the terms of which appear in the foregoing statement, is an act or law impairing the obligation of contracts within the meaning of the Constitution of the United States.

The peculiar character, under the laws of the State of Penn-

sylvania, of irredeemable ground rents, must first receive our notice.

It is defined to be a rent reserved to himself and his heirs by the grantor of land, out of the land itself. It is not granted like an annuity or rent charge, but is reserved out of a conveyance of the land in fee. It is a separate estate from the ownership of the ground, and is held to be real estate, with the usual characteristics of an estate in fee simple, descendible, devisable, alienable. *Bosler* v. *Kuhn*, 8 W. & S. 183, 185; *Wallace* v. *Harmstad*, 44 Penn. St. 492, 495; *McQuigg* v. *Morton*, 3 Wright, 31.

It may be well to quote the language of the deed reserving the ground rent in question, which is that usually employed in the creation of such estates. The *tenendum* clause is in the usual form : "To have and to hold the said described lot or piece of ground, hereditaments and premises hereby granted with the appurtenances unto the said Adam Iseminger, his heir and assigns, to the only proper use and behoof of the said Adam Iseminger, his heirs and assigns forever." Then comes the reservation, as follows :

"Yielding and paying therefor and thereout unto the said Alexander Osbourne, his heirs and assigns, the yearly rent or sum of seventy-two dollars, lawful money of the United States, in half-yearly payments on the first day of April and October every year hereafter forever, without any deduction, defalcation or abatement for any taxes, charges or assessments whatsoever to be assessed as well on the said hereby granted premises as on the said yearly rent hereby and thereout reserved. The first half-yearly payment thereof to be made on the first day of October, one thousand eight hundred and fifty-four, and, on default of paying the said yearly rent on the days and time and in manner aforesaid, it shall and may be lawful for the said Alexander Osbourne, his heirs and assigns, to enter into and upon the said hereby granted premises or any part thereof, and into the buildings thereon to be erected, and to distrain for the said yearly rent so in arrears and unpaid, without any exemption whatsoever, any law to the contrary thereof in any wise notwithstanding, and to proceed with and sell such distrained goods

and effects, according to the usual course of distresses, for rent charges. But if sufficient distress cannot be found upon the said hereby granted premises to satisfy the said yearly rent in arrear and the charges of levying the same, then and in such case it shall and may be lawful for the said Alexander Osbourne, his heirs and assigns, into and upon the said hereby-granted lot and improvements wholly to reënter, and the same to have again, repossess and enjoy as in his and their first and former estate and title in the same and as though this indenture had never been made," etc.

It appears in the Pennsylvania cases, hereinbefore and hereafter cited, that this form of estate was, in the early history of the Commonwealth, a favorite form of investment; but that eventually great inconveniences arose from the existence of ancient ground rents, which the owners and occupants of the land never heard of, but of whose extinguishment the records of title made no mention. Indeed, the records disclosed the reservation of such ground rents unpaid and unextinguished, going back more than a century. In *Korn* v. *Browne*, 64 Penn. St. 55, there is a quotation in the opinion from a tract by Mr. Eli K. Price, a distinguished real estate lawyer of Philadelphia, as follows:

" Those only who are accustomed to make or read briefs of title in Philadelphia, going back to the times of the first settlement, know how frequently occur ancient rent charges and ground rents, which the landowners of the present day never heard of, and which generally have no doubt been honestly extinguished; while making this note the writer has such a single brief before him for an opinion, in which no less than three such charges occur as blemishes, grants or reservations more than a century ago, which no person living has any knowledge of."

These evils led to the passage of the act of the 27th of April, 1855, entitled " An act to amend certain defects of the law for the more just and safe transmission, and secure enjoyment of real and personal estate."

The theory of this remedial act is that upon which all statutes of limitation are based—a presumption that, after a long

lapse of time without assertion, a claim, whether for money or for an interest in land, is presumed to have been paid or released. This is a rule of convenience and policy, the result of a necessary regard to the peace and security of society.

Bonds, even when secured by mortgages upon land, mortgages themselves, merchants' accounts, legacies, judgments, promissory notes, and all evidences of debt, have universally been treated as lawfully within the reach of legislative power exercised by the passage of statutes of limitation. Such statutes, like those forbidding perpetuities and the statute of frauds, do not, in one sense, destroy the obligation of contracts as between the parties thereto, but they remove the remedies which otherwise would be furnished by the courts. Are not the powers of government adequate for this?

"Laws for the preservation and promotion of peace, good order, health, wealth, education, and even general convenience, are supported under the police power of the State. Under these laws, personal rights, rights of property, and freedom of action, may be directly affected, and men may be fined, imprisoned and restrained, and property taken, converted and sold away from its owner. The principle of such laws is most easily perceived and recognized when men are held liable for nuisances and negligences affecting the health and safety of society, when the marriage contract is dissolved, and when property is subjected to charges and sales for matters affecting the public interest and welfare. Beyond this is a wide domain of general convenience where the power is likewise exercised. Thus estates held in joint tenancy and in common may be divided among the tenants, even by conversion and sale; life estates and remainders may be separated from each other; qualified inheritances expanded into absolute fee, and contingent and executory interests extinguished. What greater reason has the owner of an irredeemable ground rent, coming down from a former generation, to complain, than the owner of a remainder or reversion, or of some contingent or executory interest?" C. J. Agnew in *Palairet's Appeal*, 17 P. F. Smith, 479.

"Notwithstanding the protection which the law gives to vested rights, it is possible for a party to debar himself of the

right to assert the same in the courts by his own negligence or laches. If one who is dispossessed be negligent for a long and unreasonable time, the law refuses afterwards to lend him any assistance to recover the possession merely, both to punish his neglect, and also because it is presumed that the supposed wrongdoer has in such a length of time procured a legal title, otherwise he would sooner have been sued. Statutes of limitation are passed which fix upon a reasonable time within which a party is permitted to bring suit for the recovery of his rights, and which, on failure to do so, establish a legal presumption against him that he has no legal rights in the premises. Such a statute is a statute of repose. Every government is under obligation to its citizens to afford them all needful legal remedies; but it is not bound to keep its courts open indefinitely for one who neglects or refuses to apply for redress until it may fairly be presumed that the means by which the other party might disprove his claim are lost in the lapse of time." Cooley on Limitations, 6th ed. 44; *Bell* v. *Morrison*, 1 Pet. 351; *Leffingwell* v. *Warren* 2 Black, 606.

We are unable to perceive any sound distinction between claims arising out of ground-rent deeds and other kinds of debts and claims, which would exempt the former from the same legislative control that is conceded to lawfully extend to the latter.

But, assuming that there is nothing peculiar in ground rents that withdraw them from the reach of statutes of limitation, it is further contended, in the present case, that the act of April 27, 1855, can have no valid application to a ground rent reserved before the passage of that statute. It may be properly conceded that all statutes of limitation must proceed on the idea that the party has full opportunity afforded him to try his right in the courts. A statute could not bar the existing rights of claimants without affording this opportunity; if it should attempt to do so, it would not be a statute of limitations, but an unlawful attempt to extinguish rights arbitrarily, whatever might be the purport of its provisions. It is essential that such statutes allow a reasonable time after they take effect for the commencement of suits upon existing causes of action; though

what shall be considered a reasonable time must be settled by the judgment of the legislature, and the courts will not inquire into the wisdom of its decision in establishing the period of legal bar, unless the time allowed is manifestly so insufficient that the statute becomes a denial of justice. Cooley on Limitations, 451.

Thus in *Terry* v. *Anderson*, 95 U. S. 628, it was said by Chief Justice Waite:

"This court has often decided that statutes of limitation affecting existing rights are not unconstitutional, if a reasonable time is given for the commencement of an action before the bar takes effect. *Hawkins* v. *Barney*, 5 Pet. 451; *Sohn* v. *Waterson*, 17 Wall. 596.

"It is difficult to see why, if the legislature may prescribe a limitation where none existed before, it may not change one which has already been established. The parties to a contract have no more a vested interest in a particular limitation which has been fixed than they have in an unrestricted right to sue. They have no more a vested interest in the time for the commencement of an action than they have in the form of the action to be commenced; and as to the forms of action or modes of remedy, it is well settled that the legislature may change them at its discretion, provided adequate means of enforcing the right remain.

"In all such cases, the question is one of reasonableness, and we have, therefore, only to consider whether the time allowed in this statute is, under all the circumstances, reasonable. Of that the legislature is primarily the judge, and we cannot overrule the decision of that department of the government, unless a palpable error has been committed. In judging of that, we must place ourselves in the position of the legislators, and must measure the time of limitation in the midst of the circumstances which surrounded them, as nearly as possible; for what is reasonable in a particular case depends upon its particular facts." *Tanner* v. *New York*, 168 U. S. 90; *Saranac Land Co.* v. *Roberts*, 177 U. S. 44.

In *Korn* v. *Browne*, 64 Penn. St. 57, this question was considered, and it was said, per Read, J.:

"The seventh section did not go into effect for three years, and gave ample time to all owners of ground rents to make claims and demands for the same, so as to prevent the bar of the statute. This prospective commencement makes the retrospective bar not only reasonable but strictly constitutional." Citing *Smith* v. *Morrison*, 22 Pick. 430, and *Ross* v. *Duval*, 13 Pet. 64.

In *Biddle* v. *Hooven*, 120 Penn. St. 225, it was said, referring to *Korn* v. *Browne*, 64 Penn. St. 55, 57, "an examination of it shows that the only question there argued was whether the section of the act referred to has a retrospective as well as a prospective operation with respect to ground rents. This appears in the first sentence of the opinion of Judge Read. He very properly held that as the seventh section did not go into effect for three years, and gave ample time to all owners of ground rents to make claims and demands for the same, so as to prevent the bar of the statute, that this prospective commencement made the retrospective bar not only reasonable but constitutional. In other words, the act gave ample time to preserve all existing rights. . . . The only ground upon which this kind of legislation can be justified is that after the lapse of the statutory period the mortgage or other security is presumed to have been paid, or the ground rent extinguished. The payment of a mortgage and the extinguishment of a ground-rent mean substantially the same thing. The act was not intended to destroy the ground landlord's ownership in the rent; it does not impair his title thereto; nor can it be said to impair the contract by which the rent was reserved, but from well-grounded reasons of public policy it declares that when the owner of such rent makes no claim or demand therefor for twenty-one years it presumes it has been extinguished, which means nothing more than that it has been paid. The language cited, as before observed, affects only the remedy; if it meant more it would be void for the excess."

The same conclusion was reached by the Supreme Court of Pennsylvania in *Wallace* v. *Fourth U. P. Church*, 152 Penn. St. 258, where it was said that "the purpose of the act of 1855 was to relieve titles and facilitate the sale of real estate. It

fixes upon an arbitrary period of twenty-one years as that over which the search of a purchaser or other person must extend, and beyond which it shall not be necessary for him to look. If for twenty-one years no payment upon or acknowledgment of the ground rent can be shown, and no demand for payment has been made, the act conclusively presumes a release and extinguishment of the incumbrance by the act of the parties, and declares that the rent shall be thereafter irrecoverable." In that case the ground rent had been reserved long before the passage of the act of April 27, 1855, and it was held that as twenty-one years and ten months had elapsed without the payment of rent, or demand for the same, the right to demand it was extinguished.

So, in the present case, where no payment or demand was shown to have been made for more than twenty-one years, it was held that, in view of the numerous and repeated decisions, the question must be considered at rest. *Clay* v. *Iseminger*, 187 Penn. St. 108.

*We are, therefore, of opinion that the Supreme Court of Pennsylvania did not err in holding that the seventh section of the act of April 27, 1855, was constitutionally applicable, and its judgment is affirmed.*