Damers et al., Recurrentes, *v.* El Registrador, Recurrido.

Recurso gubernativo contra nota del Registrador de la Propiedad de San Juan, Sección 2ª., denegando la inscripción de un expediente de conversión de posesión en dominio.

No. 161.—Resuelto en marzo 30, 1914.

Expediente de Conversión de Posesión en Dominio—Debido Procedimiento de Ley.—En 7 de septiembre de 1900 se inscribió un expediente posesorio en el registro de la propiedad y en 5 de septiembre de 1913 se presentó también

para su inscripción en el registro el expediente de conversión de la posesión en dominio, resuelto el 22 de agosto de 1913, de acuerdo con la Orden Judicial de 4 de abril de 1899. El registrador se negó a hacer la inscripción solicitada y esta corte resolvió: que debía inscribirse el expediente por no ser el procedimiento seguido contrario a la cláusula constitucional del debido procedimiento de ley.

DEBIDO PROCEDIMIENTO DE LEY—REDUCCIÓN DEL PERÍODO DE PRESCRIPCIÓN—ORDEN JUDICIAL DE ABRIL 4, 1899.—La Orden Judicial de abril 4, 1899, no puede estimarse inconstitucional por el solo hecho de haber reducido a seis años el período de prescripción de 20 años que exigía el artículo 393 de la Ley Hipotecaria para la conversión de una inscripción posesoria en otra de dominio.

ORDEN JUDICIAL DE ABRIL 4, 1899—INTERPRETACIÓN DE LA OPINIÓN EN EL CASO DE OCHOA V. HERNÁNDEZ, 230 U. S., 139.—El Tribunal Supremo de los Estados Unidos ha decidido a lo sumo en dicho caso que la Orden Judicial de abril 4, 1899, es contraria a la cláusula constitucional del debido proceso de ley, en cuanto a su efecto retroactivo que produjo en dicho caso el efecto de privar de su derecho a unos menores de edad.

GOBERNADORES MILITARES DE PUERTO RICO—SUS FACULTADES—VALIDEZ DE LAS ÓRDENES GENERALES.—Habiendo el Congreso ratificado las Órdenes de los Gobernadores Militares americanos en Puerto Rico, no cabe sostener que dichos Gobernadores carecían de facultad para enmendar las leyes vigentes en esta isla en aquella fecha, entre las cuales estaba la Ley Hipotecaria que aun subsiste con algunas modificaciones, a menos que los Gobernadores primero y luego el Congreso, en el ejercicio de su poder, se hubieran excedido de las limitaciones impuestas por la Constitución.

Los hechos están expresados en la opinión.

Abogado de los recurrentes: *Sr. Gabriel Guerra.*

El Registrador Sr. José Benedicto no compareció.

EL JUEZ ASOCIADO SR. DEL TORO, emitió la opinión del tribunal.

El presente es un recurso gubernativo contra nota del Registrador de la Propiedad de San Juan, Sección 2ª., negándose a convertir en inscripción de dominio cierta inscripción posesoria.

Henry A. Damers y Arthur W. Kuenzli tramitaron en el Juzgado Municipal de Bayamón un expediente para acreditar la posesión de una finca rústica de veinte cuerdas, que fué resuelto favorablemente el 19 de julio de 1900 e inscrito en el Registro de la Propiedad de San Juan el 7 de septiembre del mismo año.

En 10 de junio de 1913 los dichos Damers y Kuenzli solicitaron del registrador que les expidiera certificación credi-

tiva de los anteriores hechos y de que la prescripción no se
había interrumpido. Así lo hizo el registrador y los interesados acudieron entonces a la Corte Municipal de Bayamón
y tramitaron un expediente sobre conversión de posesión
en dominio, que fué resuelto en la siguiente forma:

"En la Corte Municipal del Distrito Judicial Municipal de Bayamón. Henry A. Damers y Arthur W. Kuenzli. Ex parte. Conversión de posesión en inscripción de dominio. Por cuanto Henry A. Damers y Arthur W. Kuenzli de treinta y cinco y treinta y seis años de edad respectivamente, propietarios y vecinos de la Capital, representados por su abogado Don Gabriel Guerra, han promovido el correspondiente expediente ante esta corte para convertir en dominio la posesión de la siguiente finca: Un terreno en el barrio de Pájaros de este término municipal compuesto de veinte cuerdas, colindante por el Norte con el Río Hondo: por el Sur Thomas Cruce y Saturnino Román; por el Este Aniceto Padilla, y por el Oeste Elena Gaetán. Por cuanto, publicado el oportuno edicto convocando a las personas que pudieran ser perjudicadas en la conversión solicitada en el periódico titulado "El Tiempo" correspondiente a los días 10, 11 y 12 de julio del corriente año no se ha deducido ninguna reclamación no obstante haber transcurrido con exceso el término de quince días señalados al efecto en dicho edicto, apareciendo de la certificación expedida por el Sr. Registrador de la Propiedad que la prescripción no ha sido interrumpida. Por tanto, de conformidad con lo prevenido en el Artículo 393 de la Ley Hipotecaria y 441 de su Reglamento y Orden Judicial de 4 de abril de 1899 se declara concluso este expediente y expídase testimonio por duplicado a los recurrentes, para que el registrador de la propiedad del distrito, convierta en dominio la inscripción de posesión de la finca descrita. Dado en corte abierta hoy 22 de agosto de 1913. José J. Acosta y Acosta. Juez Municipal. José Torres Muñiz. Secretario de la Corte Municipal."

Presentada la anterior resolución acompañada de todos
sus antecedentes en el registro, el registrador negó la conversión por medio de la siguiente nota:

"Denegada la conversión solicitada en virtud del precedente documento, por no haber transcurrido desde el 7 de septiembre de 1900, fecha de la inscripción, los veinte años que exige el artículo

393 de la Ley Hipotecaria, pues si bien la orden judicial fecha 4 de abril de 1899 redujo dicho plazo a seis años, el Tribunal Supremo de Wáshington en sentencia de 16 de junio del·corriente año ha declarado que el General Guy V. Henry, que dictó dicha orden, no estaba facultado para modificar la Ley Hipotecaria, ni por consiguiente para limitar a seis años el término señalado para la conversión; y siendo esto así, es ineficaz la referida orden y queda en toda su fuerza y vigor lo preceptuado en el citado artículo 393 de dicha Ley; y se ha extendido nota preventiva, por término legal, al folio 2 vuelto, tomo 40 de Bayamón, finca 1954, al márgen de la inscripción 1ª., haciéndose constar además el defecto subsanable de no justificarse que esté ejecutoriado el auto declarando concluso el expediente. San Juan, P. R., septiembre 23 de 1913.''

Contra esa nota interpuso la parte interesada el presente recurso gubernativo, limitándose a impugnar la negativa sin hacer referencia alguna al defecto subsanable que también se consigna en la nota.

Veamos si la Corte Suprema de los Estados Unidos ha hecho o nó la declaración en que basa su negativa el registrador, esto es, que el General Henry no estaba facultado para modificar la Ley Hipotecaria, ni por consiguiente para limitar a seis años el término señalado para la conversión de una inscripción posesoria en una de dominio.

La decisión a que se refiere el registrador es la de *Ochoa* v. *Hernández,* 230 U. S., 139. Por ella la Corte Suprema de los Estados Unidos confirmó una sentencia de la Corte de Distrito de los Estados Unidos para Puerto Rico. Los hechos son así:

José María Hernández, abuelo paterno de los demandantes al tiempo de ocurrir su fallecimiento en el año 1872, era dueño y poseía una parcela de terreno de la cual formaba parte la parcela de 106 cuerdas en litigio. Su título nunca fué inscrito. Al morir él, su hijo Juan Hernández adquirió dicha finca por herencia y entró en posesión de ella y la siguió poseyendo como dueño hasta su muerte en el año 1887 sin inscribir dicho título tampoco. Al morir Juan Hernández le sobrevivieron dos hijos pequeños que son los deman-

dantes y la viuda madre de éstos. Esta murió en 1906 y los demandantes que aun eran menores, quedaron como únicos dueños de dicha finca por título de herencia de su padre, sin que tampoco inscribieran nunca su título.

En el año 1890 el título de esta finca no aparecía inscrito a nombre de nadie, ni en los libros del registro actual o moderno, ni en los del registro antiguo o sean las antiguas Anotadurías o Contadurías. En ese año Raimundo Morales, abuelo materno de los demandantes, alegando fraudulentamente ser dueño de la finca, compareció ante la Corte Municipal de Naranjito y acreditó a su favor la posesión de la finca, sin perjuicio de terceros que pudieran alegar mejor derecho a dicha posesión. El título posesorio así obtenido fué inscrito en el registro correspondiente de la propiedad en el mismo año, siendo entonces el único título de esta finca que aparecía inscrito en el registro. En el año 1899 Morales compareció de nuevo ante la misma corte para pedir la conversión de su posesión en dominio. Los fundamentos de su solicitud fueron los preceptos de la Orden Judicial de abril 4, 1889, promulgada en la Gaceta Oficial de Puerto Rico de 7 de abril de 1899. Esta orden fué dictada bajo la autoridad del Mayor General del Ejército Voluntario de los Estados Unidos, Guy V. Henry, en aquella época Gobernador Militar de Puerto Rico, y según sus disposiciones el período de 20 años durante el cual era necesario poseer bienes inmuebles para convertir el título posesorio en título de dominio, quedó reducido a seis. A instancia de Morales se tramitaron en la corte municipal los procedimientos que disponía la citada orden judicial, y la corte a su debido tiempo dictó resolución declarando que la incripción o título posesorio que aparecía en el registro inscrito a favor de Morales quedaba convertido en título o inscripción de dominio. Con posterioridad, y en el mismo año 1899, esta resolución fué inscrita por Morales en el correspondiente registro de la propiedad y en su virtud el título de dominio de la finca quedó inscrito a su nombre.

En el año 1901 sin que apareciera del registro ninguna re-

clamación, derecho o título a esta finca a favor de otra persona, Morales, alegando fraudulentamente ser el verdadero dueño de la misma, la hipotecó a los demandados, o sea la sociedad de J. Ochoa y Hermano, quienes en realidad y de buena fe creyeron que Morales era el dueño de ella y desconocían los derechos que los demandantes pudieran tener a la misma. Dicha hipoteca fué inscrita en el registro de la propiedad correspondiente en el mismo año. Posteriormente en el año 1903 cuando del registro únicamente constaba la inscripción del título de dominio de estas fincas a favor de Morales y la hipoteca a favor de los demandados, quienes aun ignoraban los derechos de los demandantes, el citado Morales, en virtud de escritura otorgada ante notario público con la comparecencia de su esposa, vendió la finca a los demandados en pago total de la cantidad garantizada por la hipoteca. Los demandados inscribieron dicha escritura en el mismo año e inmediatamente por medio de su mandatario tomaron posesión de la finca. El pleito fué iniciado en 1908 poco después de haber llegado los demandantes a su mayor edad.

Fundándose en los anteriores hechos, la Corte de Distrito de los Estados Unidos declaró, como cuestión de derecho, que la Orden Judicial del General Henry de 4 de abril de 1899, en cuanto afectaba retroactivamente los derechos de los demandantes, que en aquella época eran menores y continuaron siéndolo por algún tiempo después y quienes eran dueños de la finca durante todo el período de nueve años que había transcurrido desde la inscripción fraudulenta del título posesorio a favor de su abuelo materno el citado Morales y la promulgación de la Orden del General Henry, era nula por ser contraria a la cláusula de la Enmienda 5ª. de la Constitución de los Estados Unidos relativa al "debido procedimiento de ley."

Establecido lo que antecede, la Corte Suprema de los Estados Unidos, por medio de su Juez Sr. Pitney, hace un amplio y cuidadoso estudio de los hechos y la ley, fija el alcance de las inscripciones posesorias, analiza los preceptos

de la Ley Hipotecaria pertinentes al caso y procede luego a considerar la cuestión fundamental que sirvió de base a la corte inferior para dictar su sentencia. Al hacerlo así, expone los hechos históricos necesarios y las fuentes de las cuales derivaron su poder los gobernadores militares de Puerto Rico durante la ocupación americana, y dice:

"Teniendo en cuenta todas estas circunstancias, nosotros creemos que es claro que el Gobernador no recibió autoridad del Presidente para dictar una orden de carácter judicial que produjera el efecto de privar a una persona de sus bienes sin el debido procedimiento de ley.

"Se nos dice que la sección 8 de la Ley Foraker (31 Stat., 79 ch., 191) produjo el efecto de ratificar la orden judicial del General Henry. Dicha sección disponía: 'Que las leyes y ordenanzas de Puerto Rico actualmente en vigor, continuarán vigentes, excepto en los casos en que sean alteradas, enmendadas o modificadas por la presente; o hayan sido alteradas o modificadas por órdenes militares y decretos vigentes cuando esta ley entre a regir, y en todo aquello en que las mismas no resulten incompatibles, o en conflicto con las leyes estatutorias de los Estados Unidos no inaplicables localmente, o con las presentes disposiciones, hasta que sean alteradas, enmendadas, o revocadas por la autoridad legislativa creada por la presente para Puerto Rico, o por una Ley del Congreso de los Estados Unidos' * * * y siguen algunas disposiciones que no hacen al caso. No encontramos en estos preceptos que exista la intención por parte del legislador de convalidar una orden del gobernador militar dictada en exceso de la autoridad que le confirió el Presidente.

"Sin la garantía del 'debido procedimiento de ley' no puede decirse que exista el derecho a la propiedad privada en el sentido en que lo entendemos en nuestra legislación. Tal principio, conocido ya en el derecho consuetudinario antes de la Magna Charta, fué incorporado en esa Ley (Coke, 2 Inst., 45, 50) y ha sido reconocido desde la Revolución como una de las bases más firmes de nuestras instituciones. Cual-

quier incertidumbre que pueda existir acerca de la definición
de la frase 'debido procedimiento de ley,' todos los comen-
taristas están de acuerdo en que dicho principio prohíbe el
tomar la propiedad de una persona y dársela a otra, em-
pleando medios contrarios a las costumbres y formas de pro-
cedimientos ya establecidos y sin notificación ni audiencia.

"Ahora bien, el efecto producido por la disposición retro-
activa de la Orden Judicial de abril 4, 1899, en cuanto a los
hechos de este caso concreto, ha sido el de que, a pesar de
que Morales hasta aquel momento no tenía derecho, ni título,
ni participación alguna en la finca en litigio, sino que úni-
camente había establecido por medios fraudulentos y sin noti-
ficación a las partes interesadas un principio de posesión,
podría él obtener por medio de procedimientos *ex parte* un
título a su favor contrario al de las personas interesadas
en la finca, si éstas no impugnaran los derechos del poseedor,
y estuviera éste en posesión continua por doce años más; y
sin embargo al amparo de la Orden Judicial pudo él en el
acto y sin notificación a los dueños, obtener a su favor una
inscripción de dominio, a pesar de que se trataba de menores,
y por lo que resulta de los autos, no tenían conocimiento de
que él poseyera la finca, ni de los procedimientos iniciados
por él, y a esto hay que añadir que él podría en virtud de
otros preceptos de la Ley Hipotecaria, privar a los menores
de su propiedad vendiéndola a un comprador de buena fe que
no tuviera conocimiento de ningún defecto en su título apa-
rente.

"Con respecto a las leyes de prescripción, ha sido ya
resuelto que pueden ser modificadas acortando el período
prescriptivo, siempre que esto se haga mientras está co-
rriendo el término y de tal forma que aun quede por correr
un período razonable para que pueda interponerse una acción
antes de que la prescripción lo impida. *Terry* v. *Anderson,*
95 U. S., 628, 632; *In re Brown,* 135 U. S., 662, 701, 705;
*Wheeler* v. *Jackson,* 137 U. S., 245–255; *Turner* v. *New York,*
168 U. S., 90, 94; *Wilson* v. *Iceminger,* 185 U. S., 55, 63.

Podrían citarse muchos casos más. La cuestión de lo que, atendidas ciertas circunstancias, debe considerarse como un período razonable para poder entablar una acción cuando se modifica una ley de prescripción, ha dado lugar a discusión varias veces. En el caso actual no hay tal cuestión, porque aquí no se concedió plazo alguno a estos apelados, ni a todos los demás contra cuyo dominio legítimo se ha opuesto una posesión ilegal disfrutada por más de 6 años y menos de 20 cuando se promulgó la citada orden judicial.

"Como el procedimiento para convertir la inscripción de posesión en título de dominio y el procedimiento para obtener la inscripción de posesión fueron tramitados sin notificación a los dueños, el efecto de dicha orden judicial era exactamente el mismo que si el gobernador militar hubiera declarado que la finca en litigio debería ser quitada a su legítimo dueño y entregada al poseedor fraudulento. Indudablemente que el General Henry no pudo haber tenido tal intención y debió haber sido erróneamente aconsejado en cuanto a la consecuencia que traería consigo el darle efecto retroactivo a dicha orden. De otro modo, él la hubiera limitado a aquellos casos en los cuales aun quedaba por transcurrir un período razonable para que el verdadero dueño impugnara las pretensiones del poseedor. Y teniendo en cuenta las instrucciones de las cuales él derivó su autoridad, esta orden judicial debe ser interpretada como si estuviera expresamente limitada por ellas."

Después de un detenido estudio de la decisión en el caso de Ochoa, habiendo en consideración los hechos que a la misma sirvieron de base y los párrafos que de la misma hemos transcrito, opinamos que dicha decisión no tiene el alcance que le dió el Registrador de la Propiedad de San Juan en este caso.

En el de Ochoa, la conversión de la posesión en dominio se hizo por la corte municipal y se inscribió en el registro en el año de 1899, o sea en el mismo año en que se promulgó la Orden Judicial de 4 de abril. Si dicha orden se aplicó al

caso, se debió única y exclusivamente a lo dispuesto en su sección 7, por virtud de la cual se dió a sus disposiciones efecto retroactivo.

Por el contrario en el caso sometido ahora a nuestra consideración, no tiene aplicación alguna la cláusula retroactiva de la Orden Judicial. El expediente posesorio tramitado por Damers y Kuenzli se inscribió en el registro en el año de 1900 y la conversión en dominio se declaró por la corte municipal en el de 1913, o sea catorce años después de promulgada la Orden Judicial de 4 de abril de 1899.

Dicha Orden Judicial, ratificada como lo fué por la sección 8 de la ley del Congreso para proveer, temporalmente, de rentas y un Gobierno Civil a la Isla de Puerto Rico, y para otros fines, aprobada en abril 12 de 1900, no puede estimarse inconstitucional por el solo hecho de haber acortado el período de la prescripción que la Ley Hipotecaria fijaba para la conversión de una inscripción posesoria en otra de dominio, pues, según la jurisprudencia invocada en el mismo caso de Ochoa, "con respecto a las leyes de prescripción, ha sido ya resuelto que pueden ser modificadas acortando el período prescriptivo, siempre que esto se haga mientras está corriendo el término y de tal forma que aun quede por correr un período razonable para que pueda interponerse una acción antes de que la prescripción lo impida."

Habiendo el Congreso ratificado las órdenes de los Gobernadores Militares americanos de Puerto Rico, no cabe sostener que dichos gobernadores carecían de facultad para enmendar las leyes vigentes en esta Isla en aquella fecha, entre las cuales estaban la Ley Hipotecaria que aun subsiste con algunas modificaciones, a menos que los gobernadores primero y luego .el Congreso, en el ejercicio de su poder, se hubieran excedido de las limitaciones impuestas por la Constitución.

A virtud de todo lo expuesto, no habiendo la Corte Suprema de los Estados Unidos en el caso de *Ochoa* v. *Hernández*, 230 U. S., 139, declarado, como sostiene el registrador,

''que el General Guy V. Henry, que dictó dicha Orden (la de 4 de abril de 1899), no estaba facultado para modificar la Ley Hipotecaria, ni por consiguiente para limitar a seis años el término señalado para la conversión,'' sino decidido, a lo sumo, que la repetida Orden Judicial era contraria a la cláusula constitucional del ''debido proceso de ley'' en cuanto a su efecto retroactivo, efecto que produjo en el caso concreto resuelto el de privar de su derecho a unos menores de edad; debemos concluir que no está bien fundada y debe revocarse la nota recurrida.

*Revocada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociado Aldrey.

El Juez Asociado Sr. Wolf firmó haciendo constar que estaba conforme con la sentencia por las razones consignadas en su opinión concurrente.

OPINIÓN CONCURRENTE EMITIDA POR EL JUEZ ASOCIADO SR. WOLF.

Estoy conforme con la sentencia de este tribunal y con la opinión en cuanto sostiene que la resolución de la Corte Suprema de los Estados Unidos en el caso de Ochoa no es aplicable a los hechos del caso pendiente ante nosotros. También estoy conforme con la corte en que la resolución de la Corte Suprema no resolvió que el General Henry carecía de autoridad para modificar la Ley Hipotecaria vigente en Puerto Rico. Es más, la opinión mencionada demuestra que el General Henry tenía tal autoridad siempre y cuando que a los propietarios se les concediera un tiempo razonable para impugnar el procedimiento. *Ochoa* v. *Hernández,* 230 U. S., 162. Igual consecuencia surge tácitamente del principio de que las leyes que acortan los períodos de prescripción deben conceder un tiempo razonable.

Sin embargo, la opinión escrita por el Juez Asociado Sr. Pitney no dice qué parte de la orden del General Henry fué dictada sin autoridad para ello. Tal vez pueda aceptarse

como conclusión razonable de la opinión el que la corte quiso decir que la parte retroactiva de la orden carecía de autoridad, pero también puede la opinión querer decir otras cosas· como parece deducirse de la parte en donde dice que es necesario conceder un período razonable para impugnar el expediente posesorio o de dominio a todos aquellos cuya posesión al tiempo de la promulgación de la orden no había llegado a veinte años. Véase el caso de *Ochoa* v. *Hernández, supra,* p. 162. En el caso de autos la posesión comenzó en 1900, o sea después de la promulgación de la orden del General Henry, y por tanto los razonamientos del caso de *Ochoa* v. *Hernández* no son de aplicación. Este tribunal nunca ha dudado de lo razonable que pueda ser el rebajar la prescripción de veinte a seis años, y en el caso de autos los recurrentes han poseído por más de diez años, que es la prescripción entre presentes exigida por el artículo 1858 del Código Civil. No hay cuestión aquí sobre el efecto retroactivo de la orden del General Henry y por tanto estoy de acuerdo con el tribunal en que la nota del registrador debe ser revocada.