PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No.  10-1179

STEVEN I.; MARK I.; JILL I.,

v.

CENTRAL BUCKS SCHOOL DISTRICT,
                                                          Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-08-cv-00571)
District Judge: Honorable John R. Padova

Argued July 13, 2010

Before: RENDELL, JORDAN and GREENAWAY, JR.,
Circuit Judges.

(Filed August 18, 2010)

Scott H. Wolpert, Esq.    **[ARGUED]**
Timoney Knox
400 Maryland Drive
P.O. Box 7544
Fort Washington, PA 19034-7544
   *Counsel for Appellant*

Heather Hulse, Esq.
Dennis C. McAndrews, Esq.
Gabrielle C. Sereni, Esq.    **[ARGUED]**
McAndrews Law Offices
30 Cassatt Avenue
Berwyn, PA 19312
   *Counsel for Appellees*

———————

OPINION OF THE COURT

———————

RENDELL, <u>Circuit Judge</u>.

We are asked on this appeal to resolve a conflict among the district courts in our circuit, most notably in Pennsylvania, regarding the applicability of the statute of limitations enacted as part of the 2004 amendments to the Individuals with Disabilities Education Improvement Act ("IDEA 2004") to compensatory education claims that are brought after the statute's effective date but that arise from conduct that occurred

before the statute's passage.[1]  We conclude that, because the statute of limitations did not become effective until seven months after the enactment of IDEA 2004, it is reasonable to apply it to claims based on conduct that pre-dated the law's passage.  Accordingly, we will reverse the order of the District Court and remand for further proceedings.[2]

---

[1]  *Compare Evan H. v. Unionville-Chadds Ford Sch. Dist.*, No. 07-4990, 2008 WL 4791634 (E.D. Pa. Nov. 4, 2008) (concluding that the IDEA 2004 statute of limitations applies to claims filed after the effective date even if based on conduct that occurred prior to the statute's enactment), *D.K. v. Abington Sch. Dist.*, No. 08-4914, 2010 WL 1223596 (E.D. Pa. Mar. 25, 2010) (same), *Breanne C. v. S. York Cnty. Sch. Dist.*, 665 F. Supp. 2d 504 (M.D. Pa. 2009) (same), *and Sch. Dist. of Phila. v. Deborah A.*, No. 08-2924, 2009 WL 778321 (E.D. Pa. Mar. 24, 2009) (same), *with Tereance D. v. Sch. Dist. of Phila.,* 570 F. Supp. 2d 739 (E.D. Pa. 2008) (concluding that the IDEA 2004 statute of limitations does not bar claims filed after the effective date where the cause of action accrued prior to that date), *Laura P. v. Haverford Sch. Dist.*, No. 07-5395, 2008 WL 5000461 (E.D. Pa.. Nov. 21, 2008) (same) *and J.L. v. Ambridge Area Sch. Dist.*, No. 06-1652, 2009 WL 1119608 (W.D. Pa. Apr. 27, 2009) (same).

[2]  The District Court had jurisdiction under 28 U.S.C. § 1331. The District Court certified the following issue for interlocutory appeal:

(continued...)

3

## I. Background

Steven I. was enrolled in the Central Bucks School District from the 1992-93 school year until his graduation from high school on June 17, 2005. He was first identified as learning disabled in kindergarten, and continued to be eligible for special education programming and services through his high school graduation. On May 1, 2007, Steven I.'s parents initiated a due process hearing seeking compensatory education from the 1997-1998 school year through the filing date[3] for

---

[2](...continued)

> Whether the statute of limitations under the Individuals with Disabilities Education Act, as amended by the Individuals with Disabilities Education Improvement Act, 20 U.S.C. § 1415(f)(3)(C), applies retroactively to Plaintiffs' claims for compensatory education for the time period beginning with the 1997-98 school year and concluding on May 1, 2005.

*Steven I. v. Cent. Bucks Sch. Dist.*, No. 08-571, 2009 WL 839055, at *1 (E.D. Pa. Mar. 27, 2009). This is indisputably a question of law, and thus our standard of review is *de novo.*

[3] The School District conceded that Steven I.'s claims, arising between May 1, 2005 and his graduation on June 17, 2005, were not barred by the statute of limitations. The parties

(continued...)

failure to provide a free appropriate public education under IDEA 2004 and Section 504 of the Rehabilitation Act, 29 U.S.C. § 795.

IDEA 2004 was enacted on December 3, 2004. It broke new ground by providing for a two year statute of limitations where there previously had been none. The statute of limitations provision, 20 U.S.C. § 1415(f)(3)(C), took effect on July 1, 2005, seven months after the law was passed.[4] It provides:

> A parent or agency shall request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the

---

[3](...continued) independently resolved all claims arising out of that six-week period. Steven I. also asserts that his graduation from high school was improper, and thus compensatory education would continue to accrue after June 17, 2005. This claim was rejected by the District Court and is not at issue in this appeal.

[4] IDEA 2004 specified that certain provisions in the statute would take effect on the date of the statute's enactment, December 3, 2004, and that others, including the statute of limitations, would not take effect until July 1, 2005. *See* 20 U.S.C. § 1400, historical and statutory notes.

5

complaint[5], or, if the State has an explicit time limitation for requesting such a hearing under this subchapter, in such time as the State law allows.[6]

In concluding that the two-year statute of limitations does not bar claims that accrued prior to the effective date of that statute, the District Court applied the two-part retroactivity analysis that the Supreme Court set forth in *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994), and *INS v. St. Cyr*, 533 U.S. 289, 316 (2001), focusing on (1) whether there is clear congressional intent that the statute be applied retroactively, and (2) whether the retroactive application of the statute would have an impermissible effect, that is, would it "take[] away or

---

[5] IDEA 2004 allows for two exceptions to the statute of limitations when a parent is prevented from requesting a hearing because the local educational agency (1) made specific misrepresentations that it had resolved the problem that formed the basis of the complaint; or (2) withheld information from the parent that the agency was required to provide. 20 U.S.C. § 1415(f)(3)(D). These exceptions are not at issue in this appeal.

[6] Although irrelevant to this appeal, the general consensus among federal courts is that Pennsylvania does not have a separate statute of limitations applicable to claims for compensatory education. *See Tereance D.*, 570 F. Supp. 2d at 744-45 n.6 (collecting cases).

impair[] vested rights acquired under existing law, or create[] a new obligation, impose[] a new duty, or attach[] a new disability, in respect to transactions or considerations already past." *Landgraf*, 511 U.S. at 269. The District Court noted that the first prong was not satisfied because Congress did not expressly state in IDEA 2004 that its statute of limitations was to be applied retroactively. The District Court further determined that, under the second prong, applying the IDEA 2004 statute of limitations would have an impermissible retroactive effect because to do so would impair rights that Steven I. had prior to the amendment by attaching "new legal consequences to events completed before the amendment's effective date." *Steven I. v. Cent. Bucks Sch. Dist.*, No. 08-571, 2009 WL 415767, at *5 (E.D. Pa. Feb. 18, 2009) (internal citation omitted).

On appeal, the School District urges that we should not apply a retroactivity analysis to the amended statute of limitations and should instead look to whether IDEA 2004, given the seven-month delay between the statute's enactment and the effective date of the statute of limitations provision, gave sufficient notice and a reasonable opportunity for litigants to commence an action based on claims arising in the past. Steven I. responds that the District Court correctly applied the two-step *Landgraf* analysis in concluding that the IDEA 2004 statute of limitations should not apply retroactively.

7

## II. Discussion

The *Landgraf* analysis is typically controlling on issues of retroactivity, in particular the application of new substantive requirements to conduct that occurred in the past. However, because the statute of limitations in IDEA 2004 governs Steven I.'s conduct in filing the claim, not the School District's conduct giving rise to the claim, we need not engage in a retroactivity analysis.[7] "Generally, retroactivity concerns do not

---

[7] The School District also urges that retroactivity is not an issue in this case because procedural rules "may often be applied in suits arising before their enactment without raising concerns about retroactivity." *Landgraf*, 511 U.S. at 275. This is not dispositive here because (1) statutes of limitations "lie on the cusp of the procedural/substantive distinction," *Vernon v. Cassadaga Valley Cent. Sch. Dist.*, 49 F.3d 886, 892 (2d Cir. 1995) (Cabranes, J., concurring); and (2) while the presumption against retroactivity primarily applies to a statute altering substantive rights, concerns about retroactivity are nonetheless applicable to procedural rules, *Landgraf*, 511 U.S. at 275 n.29. However, *Landgraf's* distinction between procedural and substantive rules is relevant to our analysis in that rules of procedure regulate secondary, rather than primary conduct. *Id.* at 275. Statutes of limitations regulate secondary conduct, *I.e.,* the filing of a suit, not primary conduct, *I.e.*, the actions that gave rise to the suit. Thus, the fact that a new statute of limitations was enacted after the primary conduct giving rise to

(continued...)

8

bar a changed limitation period's application to a suit filed after the amendment's effective date." *United States v. Simmonds*, 111 F.3d 737, 745 (10th Cir. 1997), *overruled on other grounds by United States v. Hurst*, 322 F.3d 1256 (10th Cir. 2003); *see also Vernon v. Cassadaga Valley Cent. Sch. Dist.*, 49 F.3d 886, 890 (2d Cir. 1995) ("Retroactivity concerns, therefore, generally do not bar the application of a changed statute of limitations to a complaint filed after the amendment . . . . The conduct to which the statute of limitations applies is not the primary conduct of the defendants . . . but is instead the secondary conduct of the plaintiffs, the filing of their suit."); *Forest v. United States Postal Serv.*, 97 F.3d 137, 140 (6th Cir. 1996) (finding that the application of a new statute of limitations is prospective because it applies to the filing of the complaint, which occurred after the statute was enacted); *Smith v. Zeneca, Inc.*, 820 F. Supp. 831, 833 (D. Del. 1993) (finding that retroactivity is not at issue when applying an amended statute of limitations where defendant's conduct occurred prior to the amendment, because "[w]hether or not suit has been filed within the statute of limitations is an act of the plaintiff, not the defendant. The only issue is which law applies to plaintiff's

---

[7](...continued)
the suit occurred, namely the filing of the claim, does not make application of the new statute of limitations unfair from a "retroactivity" standpoint because the secondary conduct governed by the statute of limitations occurred after its effective date. *Id*.

9

acts."), *aff'd*, 37 F.3d 1489 (3d Cir. 1994). Thus, retroactivity is not at issue here because it is undisputed that Steven I. filed the claim after the effective date of the statute of limitations.

The principles governing the application of amended statutes of limitation were first set out by the Supreme Court over 100 years ago:

> [A]ll statutes of limitation must proceed on the idea that the party has full opportunity afforded him to try his right in the courts. A statute could not bar the existing rights of claimants without affording this opportunity . . . . It is essential that such statutes allow a reasonable time after they take effect for the commencement of suits upon existing causes of action; though what shall be considered a reasonable time must be settled by the judgment of the legislature, and the courts will not inquire into the wisdom of its decision in establishing the period of legal bar, unless the time allowed is manifestly so insufficient that the statute becomes a denial of justice.
>
> . . . .
>
> This court has often decided that statutes of limitation affecting existing rights are not unconstitutional, if a reasonable time is given for

10

the commencement of an action before the bar takes effect.

It is difficult to see why, if the legislature may prescribe a limitation where none existed before, it may not change one which has already been established. The parties to a contract have no more a vested interest in a particular limitation which has been fixed than they have in an unrestricted right to sue.

. . . .

In all such cases the question is one of reasonableness, and we have, therefore, only to consider whether the time allowed in this statute is, under all the circumstances, reasonable. Of that the legislature is primarily the judge, and we cannot overrule the decision of that department of the government, unless a palpable error has been committed . . . for what is reasonable in a particular case depends upon its particular facts.

*Wilson v. Iseminger*, 185 U.S. 55, 62-63 (1902) (internal quotation marks omitted).

Since *Wilson*, courts have routinely noted that an amended statute of limitations cannot be "unfairly applied" so

11

as to bar an action without providing fair notice and a reasonable time for plaintiffs to bring their claims. *Simmonds*, 111 F.3d at 745; *see also Ochoa v. Hernandez y Morales,* 230 U.S. 139, 161-62 (1913) ( "[I]t is well-settled that [statutes of limitations] may be modified by shortening the time prescribed, but only if this be done while the time is still running, and so that a reasonable time still remains for the commencement of an action before the bar takes effect.") (internal quotation marks omitted); *Kelly v. Burlington N. R.R. Co.*, 896 F.2d 1194, 1198-99 (9th Cir. 1990) (stating that it would be unfair to apply a new shortened statute of limitations "to a cause of action which accrued prior to the [new] rule without affording the plaintiff a reasonable period in which to file his claim after the announcement of the new limitations period"); *Hanner v. Miss.*, 833 F.2d 55, 57 (5th Cir. 1987) (plaintiffs whose causes of action accrued before a new statute of limitations was enacted should be given a reasonable time within which to bring their actions).

As we noted above, IDEA 2004 was enacted on Dec. 3, 2004 and its statute of limitations provision became effective approximately seven months later, on July 1, 2005. Thus, Congress wrote a seven-month "grace period" into this statute. We are therefore tasked with determining whether this seven-month period provided litigants with reasonable notice[8] and

---

[8] In supplemental briefing requested by the Court regarding
(continued...)

12

opportunity to bring claims such that imposing a new statute of limitations is not unfair and hence impermissible.

We conclude that the enactment of IDEA 2004 provided sufficient notice of the new statute of limitations. "All persons are charged with knowledge of the provisions of statutes and must take note of the procedure adopted by them," *N. Laramie Land Co. v. Hoffman*, 268 U.S. 276, 283 (1925) and "a legislature need do nothing more than enact and publish the law,

---

[8](...continued)
the "retroactivity" of statutes of limitation, Steven I. mentions for the first time that IDEA 2004, 20 U.S.C. §§ 1415(d)(1)(A) and (d)(2)(E)(1), requires School Districts to give parents a procedural safeguards notice once each year that includes the time period in which to make a complaint. Steven I. states that this requirement provides an affirmative defense and that the School District did not prove that they specifically informed Steven I.'s parents of IDEA 2004's new statute of limitations prior to the effective date. However, Steven I. did not raise this issue before the District Court or in his initial brief on appeal, so it is waived. *See United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005) ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal."). Further, even if we were to consider this issue, Steven I. graduated prior to the effective date of the statute of limitations so it is unclear whether the School District even had an obligation to inform Steven I.'s parents of the new statute of limitations.

13

and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply," *Texaco, Inc. v. Short*, 454 U.S. 516, 532 (1982). Further, we defer to Congress's determination that the seven-month grace period provided sufficient notice to potential litigants:

> It is also settled that the question whether a statutory grace period provides an adequate opportunity for citizens to become familiar with a new law is a matter on which the Court shows the greatest deference to the judgment of state legislatures. A legislative body is in a far better position than a court to form a correct judgment concerning the number of persons affected by a change in the law, the means by which information concerning the law is disseminated in the community, and the likelihood that innocent persons may be harmed by the failure to receive adequate notice.

*Id.* (internal citations omitted).

We also conclude that the seven months before the IDEA 2004 statute of limitations became effective provided a reasonable opportunity for litigants to bring any claims that had already accrued. Here, again we defer to Congress's providing for the seven-month grace period, as explained above. Where Congress has enacted a shortened statute of limitations without

14

allowing any opportunity to bring a previously-accrued claim, we have provided litigants with a grace period as short as 30 days, running from the date of the enactment of the new statutes of limitations. *See Kolkevich v. Att'y Gen.,* 501 F.3d 323, 336 (3d Cir. 2007) (allowing 30 days from the date of the REAL ID Act's enactment for aliens to file petitions for review and finding that this 30-day period is reasonable); *see also Burns v. Morton*, 134 F.3d 109, 111 (3d Cir. 1998) (allowing a one-year period from AEDPA's enactment for litigants to bring habeas claims and citing cases from the Ninth, Tenth and Seventh Circuits holding the same), *and Anton v. Lehpamer*, 787 F.2d 1141, 1146 (7th Cir. 1986) (allowing a two-year grace period in which to bring suit after the Supreme Court held that state statutes of limitations apply to claims under 42 U.S.C. § 1983). We see no reason to second-guess Congress's determination that seven months provides a reasonable opportunity for litigants to bring claims.[9]

---

[9] Judge Schiller raises an interesting point buttressing the soundness of reading congressional intent to apply the new statute of limitations to all existing claims:

> Plaintiffs' proposed reading of IDEA-2004, which would declare it inapplicable to claims involving underlying conduct that occurred prior to its enactment, poses another problem that Congress could not have intended. Under this reading, had

(continued...)

15

In *Texaco*, Justice Brennan spoke to the issue of fairness, which balances the need for a grace period when shortening a limitations period, with the need for injured parties to be vigilant in protecting their rights:

The Court has upheld retroactive adjustments to a limitations period only when the legislature has provided a grace period during which the potential plaintiff could reasonably be expected to learn of the change in the law and then initiate his action. In the context of a retrospective statute of limitations, a reasonable grace period provides an adequate guarantee of fairness. Having suffered the triggering event of an injury, a potential plaintiff is likely to possess a heightened alertness to the possibly changing requirements of the law bearing on his

[9](...continued)

Plaintiffs requested their special education due process hearing on February 21, 2008, instead of in 2007, they would be permitted to raise claims relating to conduct from the prior two years (February 21, 2006 to February 21, 2008) and claims from the period prior to July 1, 2005, the date IDEA-2004 took effect, but would be barred from raising claims based on conduct occurring between July 1, 2005 and February 21, 2006. Congress could not have intended such a bizarre outcome.

*Evan H.*, 2008 WL 4791634 at *4.

16

claim. Because redress necessarily depends on recourse to the State's judicial system, the State is free to condition its intervention on rules of procedure, and further, to impose on the potential plaintiff the obligation to monitor changes in those rules. Plaintiffs, and their attorneys, are so aware.

454 U.S. at 549. (Brennan, J., dissenting[10]).

We conclude that the time period between IDEA 2004's enactment and the effective date of its statute of limitations gave Steven I. ample time to become aware of the change in the law and a reasonable opportunity to file a claim based on conduct dating back to 1997. Steven I.'s parents did not initiate a due process hearing until May 1, 2007. Thus, the two-year statute of limitations in IDEA 2004 applies to Steven I.'s claims and bars any causes of action that accrued prior to May 1, 2005.

---

[10] The portion of Justice Brennan's dissent that we cite sets forth a principle that appears to be uncontested. *Texaco* involved a law that extinguished individuals' pre-existing property interests without specific notice. The dissent distinguished this from cases "involving the application of legislatively foreshortened limitations periods to causes of actions that have already vested," because that is a particular class of cases in which it is reasonable to rely on presumed knowledge of the law when Congress has provided a grace period. 454 U.S. at 549.

17

For the foregoing reasons, we will REVERSE the order of the District Court and REMAND this case for proceedings consistent with this Opinion.