**Jack MOSES, Puyallup Tribe, Plaintiffs-Appellants,**

v.

**George KINNEAR, as director of the Department of Revenue, State of Washington, Defendant-Appellee.**

**Nos. 71–2605, 71–2672.**

United States Court of Appeals, Ninth Circuit.

Nov. 2, 1973.

As Amended Jan. 9, 1974.

John Sennhauser (argued), of Seattle Legal Service Center, Seattle, Wash., Arthur Knodel, Tacoma, Wash., for plaintiffs-appellants.

Timothy R. Malone, Senior Asst. Atty. Gen. (argued), Olympia, Wash., Slade Gorton, Atty. Gen., James A. Furber, Sp. Asst. Atty. Gen., Tacoma, Wash., for defendant-appellee.

Before BARNES and CHOY, Circuit Judges, and JAMESON,* District Judge.

* Honorable W. J. Jameson, United States Senior District Judge for the District of Montana, sitting by designation.

JAMESON, District Judge:

This is a consolidated appeal from a district court order staying proceedings in two cases "pending exhaustion of state remedies by plaintiffs".

These actions were commenced by plaintiff-appellant Jack Moses, an enrolled member of the Puyallup Tribe, and Corwin King, an enrolled member of the Samish Indian Tribe, against defendant-appellee, the Director of the Washington Department of Revenue, seeking declaratory and injunctive relief against the imposition of excise taxes by the State of Washington upon the sale, possession and use of cigarettes and other tobacco products sold by Moses on Indian trust land outside the exterior boundaries of the Puyallup Reservation [1] and by King on land within the exterior boundaries of the Reservation. The district court granted leave to appellant Puyallup Tribe to intervene as a party plaintiff in both actions.

On August 6, 1971 the district court entered an order applicable to both cases assuming, but not deciding, that it had jurisdiction and staying all proceedings pending exhaustion of state remedies. Jack Moses and Puyallup Tribe appealed from the stay order. [2] The issues on this appeal are (1) whether the stay order of the district court is appealable; and (2) if so, whether the stay order was proper.

Following oral argument on appeal an order was entered deferring a ruling in

these cases until the Supreme Court decided three cases in which certiorari had been granted or probable jurisdiction noted, i. e., Mescalero Apache Tribe v. Jones et al., McClanahan v. Arizona State Tax Commission, and Tonasket v. The State of Washington.[3]

*Mescalero Apache Tribe* and *McClanahan* were decided on March 27, 1973.[4] On April 24, 1973 a per curiam was entered in *Tonasket* reading as follows:

"The judgment of the Supreme Court of Washington is vacated, and the case is remanded to that Court for reconsideration in light of §§ 6 and 7 of c. 157, 1972 Session Laws of the State of Washington, and this Court's decision in McClanahan v. Arizona State Tax Comm'n, No. 71–834 (March 27, 1973)." 411 U.S. 451, 93 S.Ct. 1941, 36 L.Ed.2d 385.

Counsel were invited to comment on the effect of these decisions of the Supreme Court and whether a decision on this appeal should be deferred until the Supreme Court of Washington reconsiders its decision in *Tonasket*. In response appellee states that "The issues of state law, for the resolution of which the U. S. Supreme Court remanded the *Tonasket* case to the state supreme court, may well have a bearing on the merits of the present controversy" and that a full resolution on the merits cannot be obtained until *Tonasket* is finally determined. Appellee urges that the State of Washington be permitted to proceed with the

---

1. When the complaint was filed it was assumed that the land on which Moses made his sales was within the exterior boundaries of the Puyallup Reservation. It was later determined that this land was outside the boundaries of the Reservation. It is, however, trust land under the control of the Bureau of Indian Affairs.

2. No appeal was taken by plaintiff King.

3. We recognized that these cases would not be dispositive of all of the issues raised in the instant cases, but concluded that the decisions might be helpful to this court in resolving this appeal and to the district court in the event of a remand.

In addition, following the district court's order of August 6, 1971, a declaratory judgment action was instituted by the State of

Washington in the Superior Court for Pierce County against the appellants and others to test the question of whether cigarettes and other tobacco products can be sold within the exterior boundaries of the Puyallup Reservation without complying with the revenue laws of the State of Washington. That case was removed to federal court and a motion to remand to state court was filed. At this court's request and by agreement of counsel, no further action has been taken in that case pending determination of this appeal.

4. Mescalero Apache Tribe v. Jones, 411 U.S. 145, 93 S.Ct. 1267, 36 L.Ed.2d 114; McClanahan v. Arizona State Tax Commission, 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129.

action in the Pierce County Superior Court; that this court no longer defer a decision; and that the order of the district court be affirmed.

Appellants argue that the reconsideration of *Tonasket* will not necessarily have a bearing on these cases and that the district court will be able to render a decision based on "present federal law", including the decision in *McClanahan*. In the alternative, appellants urge that the decision on this appeal be deferred further until the Washington Supreme Court has reconsidered *Tonasket*, so that this court will be in a better position "to instruct the District Court as to what issues should be considered if and when the case is remanded".

We have concluded to remand now to the district court for further consideration in the light of this opinion.

### *Appealability of Stay Order*

■ Appellee contends that the stay order is not an appealable order under 28 U.S.C. § 1291, which provides, in pertinent part: "The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States * * *." It is argued that the stay order is not a "final decision".

The rule here applicable was summarized in 9 Moore's Federal Practice, para. 110.20 [4.-2] at 251 (2d ed. 1973) as follows:

"If there is no action pending in a state court[5] and the district court stays the action before it and directs the parties to go to the state court to obtain a ruling as to what the state law is, the stay is appealable as a final order under 28 USC § 1291. If injunctive relief is sought in the district

court action, such a stay is also appealable as a denial of an injunction under 28 USC § 1292(a)(1)."[6]

We conclude that the district court's order staying proceedings "pending exhaustion of state remedies by plaintiffs" is an appealable order under 28 U.S.C. §§ 1291 and 1292(a)(1).

### *Subject Matter Jurisdiction*

Assuming, without deciding, that it had jurisdiction, the district court stated that "upon the record now presented it is clear the Court should not interfere with exercise of state tax power where adequate remedies are available to plaintiffs in the courts of this state," citing 28 U.S.C. § 1341, which provides:

"The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

At first glance it would appear that § 1341 bars this action. There are exceptions to § 1341, however, and one of them is applicable here.

■ The Supreme Court has said that "§ 1341 does not act as a restriction upon suits by the United States to protect itself and its instrumentalities from unconstitutional state exactions." Department of Employment v. United States, 385 U.S. 355, 358, 87 S.Ct. 464, 467, 17 L.Ed.2d 414 (1966). This rule, commonly known as the federal instrumentality doctrine, has its clearest application in cases where the United States is both a plaintiff and "has in fact a proprietary interest". United States v. Arlington County, Commonwealth of Virginia, 326 F.2d 929, 931 (4 Cir. 1964).[7] However, the instrumentality doctrine has also

---

5. At the time the district court entered its stay order on August 6, 1971 there was no action in state court. The state court action was filed on October 29, 1971.

6. See Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715 at n. 2, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962); Druker v. Sullivan, 458 F.2d 1272, 1274 at n. 3 (1 Cir. 1972).

7. For example, when the United States is seeking to enjoin state taxation of realty which it holds in trust for the use of Indians or personalty which is traceable to property given the Indians by the Government. United States v. Rickert, 188 U.S. 432, 23 S.Ct. 478, 47 L.Ed. 532 (1903); United States v. Pearson, 231 F. 270 (D.S.D.1916).

been held applicable where the Government sues on behalf of a private party in order to protect and enforce its policies with respect to those in whom the United States has a special interest, though perhaps not a proprietary one.[8] The doctrine also applies where the United States is not a party plaintiff, if the suit could have been brought by the United States and is in fact brought by parties who could properly be co-plaintiffs with the United States. *Agua Caliente Band of Mission Ind. v. County of Riverside,* 442 F.2d 1184, 1186 (9 Cir. 1971), cert. denied, 405 U.S. 933, 92 S.Ct. 930, 30 L.Ed.2d 809 (1972).

■ There can be no doubt that the United States has a special interest in its ward Indians, with respect to which the Government "has charged itself with moral obligations of the highest responsibility and trust". *Seminole Nation v. United States,* 316 U.S. 286, 297, 62 S. Ct. 1049, 1054, 86 L.Ed. 1480 (1942). This "special interest" has manifested itself in the form of a federal policy to protect Indians and Indian property from state taxation. This was recognized most recently in *McClanahan, supra* at 170–171 of 411 U.S., at 1261 of 93 S.Ct., where the Court quoted with approval "a leading text on Indian problems" as summarizing "the relevant law: 'State laws generally are not applicable to tribal Indians on an Indian reservation except where Congress has expressly provided that State laws shall apply. It follows that Indians and Indian property on an

Indian reservation are not subject to State taxation except by virtue of express authority conferred upon the State by act of Congress.' U. S. Dept. of the Interior, Federal Indian Law 845 (1958) * * *."

28 U.S.C. § 1362 provides:

"1362. Indian tribes.—The district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States." [9]

While § 1362 does not confer jurisdiction with respect to the claims of Moses [10] and the statutory basis of jurisdiction is not expressly alleged, it seems clear from the allegations of the complaint that the district court has jurisdiction under 28 U.S.C. § 1331.

■ We conclude that the district court has subject matter jurisdiction over appellants' claims, under 28 U.S.C. §§ 1331 and 1362, and that this jurisdiction is not defeated by 28 U.S.C. § 1341, since it falls within the instrumentality doctrine's exception to the jurisdictional bar of § 1341.

Having concluded that the district court has jurisdiction, we turn to the other rather complex factual and procedural issues raised by the respective parties and which should be resolved initially by

8. See *Arlington County, supra,* and United States v. Sullivan, 270 F.Supp. 236 (D.Conn. 1967), which were suits by the United States on behalf of servicemen to protect the Government's statutory policies against state taxation with respect to members of the Armed Forces.

9. It is clear from the legislative history of § 1362 that one of the purposes of the legislation was to permit the Tribes to initiate litigation involving issues which could have been instituted by the United States as trustee. The Report of the House Judiciary Committee (H.R.Rep.No.2040, 89th Cong., 2d Sess. (1966)) on S. 1356 which became the Act of October 10, 1966 reads in pertinent part:

"The enactment of this bill would provide for U.S. district court jurisdiction in those cases where the U.S. attorney declines to bring an action and the tribe elects to bring the action. * * * It can therefore be seen that the bill provides the means whereby the tribes are assured of the same judicial determination whether the action is brought in their behalf by the Government or by their own attorneys. There is a large body of Federal law which states the relationship, obligations and duties which exist between the United States and the Indian tribes. The Federal forum is therefore appropriate for litigation involving such issues."

10. See Quinault Tribe of Indians v. Gallagher, 368 F.2d 648, 656 (9 Cir. 1966).

the district court in the light of comments in this opinion.

### Impact of Tonasket, McClanahan, and Mescalero

In view of the remand of *Tonasket* to the Supreme Court of Washington for further consideration, the district court may properly stay further proceedings in these cases pending the resolution of any state law issues in *Tonasket*. It seems clear, and the parties apparently agree, that the resolution of the state law issues in *Tonasket* may have some bearing on the determination of these cases on the merits.

The Supreme Court of Washington was also directed to reconsider *Tonasket* in the light of *McClanahan,* where the Court held that the State of Arizona has no jurisdiction to impose a tax on the income of Navajo Indians residing on the Navajo Reservation, whose income is wholly derived from reservation sources. In limiting the effect of its decision the Court said in part:

"It may be helpful to begin our discussion of the law applicable to this complex area with a brief statement of what this case does not involve. We are not here dealing with Indians who have left or never inhabited reservations set aside for their exclusive use or who do not possess the usual accoutrements of tribal self-government. * * * Nor * * * is this a case where the State seeks to reach activity undertaken by reservation Indians on nonreservation lands. * * * Rather, this case involves the narrow question whether the State may tax a reservation Indian for income earned exclusively on the reservation." 411 U.S. at 167–168, 93 S.Ct. at 1260.

In *Mescalero,* the Court clearly recognized the distinction between income from activities on and off Indian reservations, saying:

"absent cession of jurisdiction or other federal statutes permitting it, there has been no satisfactory authority for taxing Indian reservation lands or Indian income from activities carried on within the boundaries of the reservation, and McClanahan v. Arizona State Tax Comm'n, *supra,* lays to rest any doubt in this respect by holding that such taxation is not permissible absent congressional consent.

"But tribal activities conducted outside the reservation present different considerations. 'State authority over Indians is yet more extensive over activities . . . not on any reservation.' Organized Village of Kake [Organized Village of Kake v. Egan], *supra* [369 U.S. 60], at 75 [82 S.Ct. 562, 7 L.Ed.2d 573]. Absent express federal law to the contrary, Indians going beyond reservation boundaries have generally be held subject to nondiscriminatory state law otherwise applicable to all citizens of the State." 411 U.S. at 148–149, 93 S.Ct. at 1270.

Neither appellant Moses nor plaintiff King comes within the precise category held exempt from state taxation in *McClanahan.* Appellant Moses is a member of the Puyallup Tribe, but the land on which he was selling cigarettes and other tobacco products was not within the exterior boundaries of the Puyallup Indian Reservation.[11] King is not a member of the Puyallup Tribe but was selling cigarettes within the exterior boundaries of the Reservation. Moreover, while *McClanahan* would prevent the imposition of a state excise tax on the sale of cigarettes by a member of the Tribe to Indians on the reservation, it does not reach the question of imposition of such a tax on sales to non-Indians.[12]

---

11. It was not ascertained until after appeal had been taken that this land was outside the exterior boundaries of the Puyallup Reservation. Appellant Moses then filed a motion to correct his brief "with reference to statements made in the Brief that Jack Moses was operating his business on trust land within the exterior boundaries of the Puyallup Indian Reservation."

12. It may be noted that the brief for the United States as amicus curiae filed by the Solicitor General in *Tonasket* contended that the taxes of the State of Washington at issue

The district court will of course consider the effect of *McClanahan* and *Mescalero* under the facts in these cases in the light of the final determination in *Tonasket*.

### Abstention for Determination of Other State Issues

Appellee argues that in addition to any issues of state law involved in *Tonasket*, there is a "second set of issues" of state law critical to a determination of these cases, i. e., the application of RCW 37.12.-010 and the meaning of the phrases "Indian territory * * * country and lands" and "established Indian reservation" as used in that statute.

Under RCW 37.12.010 the State of Washington assumed criminal and civil jurisdiction "over Indians and Indian territory, reservations, country and lands" within the state. However, except for eight categories of jurisdiction,[13] not including taxation, it was provided that this assumption of jurisdiction did "not apply to Indians when on their tribal lands or allotted lands within an established Indian reservation and held in trust by the United States or subject to a restriction against alienation imposed by the United States".

▉ Abstention, of course, is proper where state action is challenged in federal court as being contrary to federal law, and there are questions of state law that may be dispositive of the case; that is, where the action could be held illegal as a matter of state law, thereby obviating the need for a decision on the federal issues. Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). See also

Wright, Federal Courts § 52 (2d Ed. 1970).

In this case a decision on the federal issues can be avoided only by a holding as a matter of state law that the lands in question are within "an established Indian reservation", with respect to which Washington has not assumed taxing jurisdiction.

The Supreme Court of Washington, however, has twice held that "the Puyallup Indian Reservation has ceased to exist". Department of Game v. Puyallup Tribe, Inc., 70 Wash.2d 245, 422 P.2d 754, 759 (1967), aff'd on other grounds, 391 U.S. 392, 88 S.Ct. 1725, 20 L.Ed.2d 689 (1968);[14] State v. Satiacum, 80 Wash.2d 492, 495 P.2d 1035, 1036 (1972). Under these decisions the Washington Supreme Court has already in effect held that the Puyallup Reservation is not "an established Indian reservation" within the meaning of RCW 37.12.010. The trust land on which Moses sold cigarettes obviously is not on an "established Indian reservation", since it is not within the exterior boundaries of any Indian reservation.

On October 15, 1973 the Supreme Court, in a per curiam opinion, granted certiorari in *Satiacum* and vacated the judgment of the Supreme Court of Washington, stating that it appeared that the petitioner might have been fishing at a location outside the boundaries of what is, or was, the Puyallup Indian Reservation when the alleged offenses were committed, and if so, the Supreme Court of Washington had unnecessarily addressed and determined "the federal question whether the Puyallup Reserva-

in that case were invalid insofar as they applied to sales to Indians residing on the Reservation. Appellant contended that the sales to non-Indians were also exempt. The Solicitor General expressed no view on that issue, although he did point out certain considerations which might be of assistance to the Court.

13. The eight categories of jurisdiction assumed by Washington with respect to all Indians and Indian territory within the state include: compulsory school attendance; public as-

sistance; domestic relations; mental illness; juvenile delinquency; adoption proceedings; dependent children; and operation of motor vehicles upon the public streets, alleys, roads, and highways.

14. This case involved the rights of members of two Indian tribes to fish "at all usual and accustomed grounds" off the reservations. The Supreme Court of the United States did not reach the holding of the Washington court that the Puyallup Reservation had ceased to exist.

tion 'has ceased to exist' ".[15]   414 U.S. 1, 94 S.Ct. 209, 38 L.Ed.2d 1.

On January 29, 1973 the United States District Court for the Western District of Washington, in United States of America v. The State of Washington, an action involving the enforcement of fishing laws, held that the Puyallup Reservation has ceased to exist. That case is now pending on appeal in this court.

■ ■ The question of whether the Puyallup Reservation has been abolished or terminated is of course a federal question to be decided on the basis of federal treaties, statutes and administrative actions.[16] The present status of the Reservation may well prove critical in resolving the issues in these cases. While we find no basis for application of the abstention doctrine for determination of state issues, we do recognize that the district court may deem it advisable to defer further proceedings pending final determination of *Satiacum* and *State of Washington* as well as *Tonasket.*

■ We do not hold that the taxing jurisdiction necessarily depends upon a holding that the Puyallup Reservation has ceased to exist. If it is determined that the Reservation is still in existence, it will be necessary for the district court to determine in the light of the final determination of *Tonasket* (and other applicable law) whether the State of Wash-

ington may impose its cigarette tax laws on cigarettes sold (1) by Moses on trust land outside the exterior boundaries of the Puyallup Reservation; and (2) by King or a Puyallup Indian within the exterior boundaries of the Puyallup Reservation.[17]

### Three-Judge Court

King filed a request for a three-judge court, with a supporting brief. While the question of the propriety of a three-judge court was not raised on appeal, it may become necessary for the district court to consider this question under the complaints filed by Moses and King.

The jurisdiction of a three-judge court is governed by 28 U.S.C. § 2281. The jurisdictional requirements under this section are that "a state statute or administrative order must be challenged, a state officer must be a party defendant, injunctive relief must be sought, and it must be claimed that the statute or order is contrary to the Constitution of the United States." Wright, Federal Courts § 50 (2d Ed. 1970).

■ A three-judge court is required if a state statute is. challenged on the ground that it is contrary to some provision of the United States Constitution other than the Supremacy Clause.[18] With respect to the claims of the Puyallup Tribe, the application of the Washington cigarette tax statutes is chal-

15. The Court remanded for resolution by the state courts of the factual issue of whether the alleged offenses took place outside the boundaries of what is, or was, the Reservation.

16. *See* Satiacum v. Washington, *supra,* and Mattz v. Arnett, 412 U.S. 481, 93 S.Ct. 2245, 37 L.Ed.2d 92 (1973), where a state court in California held that the Klamath River Reservation in 1892 "for all practical purposes almost immediately lost its identity". The Court of Appeals affirmed, and the Supreme Court of California denied a hearing. The Court reversed, stating that its "conclusion that the 1892 Act did not terminate the Klamath River Reservation is reinforced by repeated recognition of the reservation status of the land after 1892 by the Department of the Interior and by Congress". 412 U.S. at 505, 93 S.Ct. at 2258.

The Associate Solicitor for Indian Affairs, Office of the Solicitor, U.S. Department of the

Interior, in an opinion dated March 26, 1971 with respect to the "Status of the Puyallup Indian Reservation in the State of Washington", concluded that "both the reservation and the Puyallup Tribe still exist as legal entities".

17. Although King is not a party to this appeal, appellee admits in its brief that the intervenor's complaint of the Puyallup Tribe "clearly appears to raise the issue of the applicability of the state cigarette tax laws to locations inside * * * [the] exterior boundaries [of the Puyallup Reservation]".

18. Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965) held that three judges are not required if the claim is that the state statute conflicts with a federal statute that, by virtue of the Supremacy Clause, is controlling.

lenged only on the ground that these statutes violate the Supremacy Clause. Moses and King, however, challenge the statutes as violative, not only of the Supremacy Clause, but also of the Commerce Clause and the Fourteenth Amendment.

### Conclusion

In summary, we conclude that the two cases should be remanded to the district court for further consideration in the light of this opinion, and we recognize the propriety of the district court's staying further proceedings pending the final determination of *Tonasket, Satiacum* and *State of Washington*. The final determination in *Satiacum* may of course be dispositive of *State of Washington*.

Remanded for further proceedings consistent with this opinion.