**CAPITAN GRANDE BAND OF MISSION INDIANS, Appellee,**

v.

**HELIX IRRIGATION DISTRICT, Appellant.**

No. 73–2956.

United States Court of Appeals, Ninth Circuit.

March 14, 1975.

Paul D. Engstrand (argued), Donald R. Lincoln, Jennings, Engstrand & Henrikson, San Diego, Cal., for appellant.

Bruce R. Greene (argued), Oakland, Cal., for appellee.

Glen R. Goodsell (argued), Dept. of Justice, Washington, D. C., for amicus curiae.

## OPINION

Before BARNES and SNEED, Circuit Judges, and MILLER,* Judge, U.S. Court of Customs and Patent Appeals.

SNEED, Circuit Judge:

This is an appeal by the Helix Irrigation District from an interlocutory order denying its motion to dismiss the complaint of appellee Capitan Grande Band of Mission Indians on the ground that the action is barred by the California statutes of limitations. Upon denying the motion the district court authorized an appeal (on that issue only) pursuant to 28 U.S.C. § 1292(b) and this court certified the appeal.

In the district court suit, filed on July 17, 1972 pursuant to 28 U.S.C. §§ 1331 and 1362, the Band sought declaratory

---

* Honorable Jack R. Miller, United States Court of Customs and Patent Appeals, sitting by designation.

relief and money damages in trespass for alleged wrongs committed by Helix and its predecessors between 1885 and 1935 in the process of construction and maintenance of a waterworks facility on the Capitan Grande Indian Reservation. The land involved was held in trust by the United States until 1934 when it was conveyed by fee patent to the City of San Diego.

Appellant contends that the application of the California state statutes of limitations is compelled by the enactment by Congress in 1953 of Public Law 280, the civil jurisdiction provisions of which were codified as 28 U.S.C. § 1360.[1] Appellee, on the other hand, contends that not only does this cause of action fall outside the scope of § 1360 but that either there is no applicable statute of limitations, or, as a minimum, the applicable statute is 28 U.S.C. § 2415, the general federal statute of limitations to which suits brought by the United States on behalf of the Indians are subject.

We agree, for the reasons stated below, that the applicable statute of limitations is the one contained in § 2415. Therefore, we affirm the district court's denial of the appellant's motion to dismiss the appellee's complaint.

I

An examination of the legislative history of P.L. 280 indicates that the measure had two coordinate aims: "First, withdrawal of Federal responsibility for Indian affairs wherever practicable; and second, termination of the subjection of Indians to Federal laws applicable to Indians as such." H.R.Rep.No.848, 83d Cong., 1st Sess. 3 (1953), adopted in S.Rep.No.699, 83d Cong., 1st Sess. 3 (1953), 2 U.S.Code Cong. & Admin.News 1953, p. 2409 (1953).[2] The report also stated that:

> [T]he Indians of several States have reached a stage of acculturation and development that makes desirable extension of State civil jurisdiction

1. 28 U.S.C. § 1360(a) provides:

Each of the States or Territories listed in the following table shall have jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country listed opposite the name of the State or Territory to the same extent that such State or Territory has jurisdiction over other civil causes of action, and those civil laws of such State or Territory that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within the State or Territory:

| State or Territory of | Indian country affected |
| --- | --- |
| California | All Indian country within the State. |

2. According to one author, the heyday of the "termination theory" is over:

[A]lthough an interpretation [of P.L. 280] finding a broad grant of power to the states might be consistent with the original national policy behind the act, such a reading is inconsistent with more modern approaches to the problem. The trend of modern thinking appears to be away from a complete termination approach and more toward the principles of the 1934 [Reorganization] act. In a speech delivered to Congress on July 8, 1970, President Nixon unilaterally declared a change in governmental policy concerning Indian affairs which he encouraged Congress to follow. In that speech, the President declared: "Self-determination among Indian people can and must be encouraged without the threat of eventual termination." The trend of judicial thinking likewise appears to be in favor of preserving the unique legal status of Indians despite frequent efforts of state and local governments to assume control.

In short, the termination philosophy which originally aided the passage of P.L. 280 is to some extent an anachronism. Given the fact that much of current governmental policy is aimed at fostering the economic independence of Indian tribes and promoting tribal self-government, interpreting P.L. 280 in such a way as to decrease Indian autonomy only serves to render governmental policy inconsistent.

Therefore, although the act was originally grounded in termination theory, that theory has been sufficiently dissipated by recent developments that it ought not to govern the act.

Comment, State Jurisdiction Over Indian Land Use: An Interpretation of the "Encumbrance" Savings Clause of Public Law 280, 9 Land and Water L.Rev. 421, 428–29 (1974). (Footnotes omitted).

**468**

to the Indian country within their borders. Permitting the State courts to adjudicate civil controversies arising on Indian reservations, and to extend to those reservations the substantive civil laws of the respective States *insofar as those laws are of general application to private persons or private property*, is deemed desirable. H.R.Rep.No.848 at 6, S.Rep.No.699 at 5, 2 U.S.Code Cong. & Admin.News 1953, at p. 2412. (emphasis added).

The emphasis upon laws "of general application to private persons or private property" is significant. While by the terms of P.L. 280 Congress, *inter alia,* may have "intended to grant to the state the full exercise of police power,"[3] and thus the ability to enforce, e. g., zoning ordinances[4] or gambling ordinances,[5] and to apply its statutes of limitations to ordinary commercial transactions "between Indians or to which Indians are parties," it is not at all clear that Congress meant for a state statute of limitations to apply in a lawsuit initiated by an Indian band against a third party for damages to its property interests held in trust by the United States for the benefit of the band.[6] Indeed, according to above-quoted House Report on P.L. 280, "[P]rovision was made for permitting the California State courts to adjudicate civil controversies of any nature affecting Indians within the State, *except where trust or restricted property was involved.*" H.R.Rep.No.848 at 5, S.Rep. No.699 at 5, U.S.Code Cong. & Admin. News, at p. 2411. (Emphasis added).

■ We also note the effect of the construction of P.L. 280 urged by appellant. To apply the California statutes of limitations without qualification would bar appellee's suit even if it had been filed on the date that P.L. 280 became law. Such a result would be discordant with the Supreme Court's view that the constitutionality of statutes of limitations depends upon whether "a reasonable time is given for the commencement of an action before the bar takes effect." Terry v. Anderson, 95 U.S. 628, 632–33, 24 L.Ed. 365 (1877). Elaborating on this proposition in a subsequent decision, the Court explained:

[A]ll statutes of limitation must proceed on the idea that the party has full opportunity afforded him to try his right in the courts. A statute could not bar the existing rights of claimants without affording this opportunity; if it should attempt to do so, it would not be a statute of limitations, but an unlawful attempt to extinguish rights arbitrarily, whatever might be the purport of its provisions. It is essential that such statutes allow a reasonable time after they take effect for the commencement of suits upon existing causes of action . . . . Wilson v. Iseminger, 185 U.S. 55, 62, 22 S.Ct. 573, 575, 46 L.Ed. 804 (1902).

■ Thus had Congress intended to bar claims such as the appellee's with respect to trust property it must be presumed that it would have preserved them for some "reasonable" period after the promulgation of P.L. 280. It might have, for example, taken the approach of 28 U.S.C. § 2415(g), *see infra,* and provided that any cause of action with respect to such property arising prior to the date the measure was enacted would be deemed to have accrued upon that date. This failure to preserve such

**3.** Agua Caliente Band of Mission Indians' Tribal Council v. City of Palm Springs, 347 F.Supp. 42, 49 (C.D.Cal.1972), vacated and remanded by this court in an unpublished order, January 24, 1975.

**4.** *Id.* at 51.

**5.** Rincon Band of Mission Indians v. County of San Diego, 324 F.Supp. 371 (S.D.Cal.1971), rev'd on other grounds, 495 F.2d 1 (9th Cir.

1974), cert. denied, 419 U.S. 1008, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974).

**6.** Our recent decision in Dillon v. Antler Land Co., 507 F.2d 940 (9th Cir. 1974), aff'g, 341 F.Supp. 734 (D.Mont.1972), is distinguishable in that it involved the application of the Montana statutes of limitations to land owned by an Indian in fee simple, which had lost its character as a trust property interest entitled to federal protection.

claims in any manner provides strong reason for interpreting P.L. 280 in a manner that does not suggest constitutional difficulties. This is accomplished by our holding that P.L. 280 does not require the application of the California statutes of limitations to the claims set forth in the complaint of the Capitan Grande Band of Mission Indians involving redress for rights in Indian trust lands and property.

## II

■ Given that the California statutes of limitations are not applicable in the case at bar, we agree with appellee that the proper limitations period is to be found in 28 U.S.C. § 2415.[7]

In 28 U.S.C. §§ 2415 and 2416 Congress for the first time established a general statute of limitations on tort and contract actions brought by the United States on its own behalf and in carrying out its trust responsibilities toward the Indians. Originally enacted on July 18, 1966 and amended during a ninety-day extension period in 1972, § 2415 now directs as follows: Causes of action governed by the section which arose prior to July 18, 1966, are deemed to have accrued on that date. All claims brought by the United States for damages for trespass to Indian lands accruing on July 18, 1966, must be filed within eleven years of that date and all subsequently-arising claims are subject to a six-year and ninety-day limitations period.

The legislative history of § 2415 demonstrates a concern for the preservation of the type of claim involved here, i. e., a

---

**7.** 28 U.S.C. § 2415, in relevant part provides:

(a) Subject to the provisions of section 2416 of this title, and except as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later: *Provided*, That in the event of later partial payment or written acknowledgment of debt, the right of action shall be deemed to accrue again at the time of each such payment or acknowledgment: *Provided further*, That an action for money damages brought by the United States for or on behalf of a recognized tribe, band or group of American Indians shall not be barred unless the complaint is filed more than six years and ninety days after the right of action accrued: *Provided further*, That an action for money damages which accrued on the date of enactment of this Act in accordance with subsection (g) brought by the United States for or on behalf of a recognized tribe, band, or group of American Indians, or on behalf of an individual Indian whose land is held in trust or restricted status, shall not be barred unless the complaint is filed more than eleven years after the right of action accrued or more than two years after a final decision has been rendered in applicable administrative proceedings required by contract or by law, whichever is later.

(b) Subject to the provisions of section 2416 of this title, and except as otherwise provid-

ed by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon a tort shall be barred unless the complaint is filed within three years after the right of action first accrues: *Provided*, That an action to recover damages resulting from a trespass on lands of the United States; an action to recover damages resulting from fire to such lands; an action to recover for diversion of money paid under a grant program; and an action for conversion of property of the United States may be brought within six years after the right of action accrues, except that such actions for or on behalf of a recognized tribe, band or group of American Indians, including actions relating to allotted trust or restricted Indian lands, may be brought within six years and ninety days after the right of action accrues, except that such actions for or on behalf of a recognized tribe, band, or group of American Indians, including actions relating to allotted trust or restricted Indian lands, or on behalf of an individual Indian whose land is held in trust or restricted status which accrued on the date of enactment of this Act in accordance with subsection (g) may be brought within eleven years after the right of action accrues.

.  .  .  .  .

(g) Any right of action subject to the provisions of this section which accrued prior to the date of enactment of this Act shall, for purposes of this section, be deemed to have accrued on the date of enactment of this Act.

cause of action for an historic trespass to Indian land.[8] On the other hand, there is nothing in the history to indicate that Congress meant for the provisions of § 2415 to apply to a suit filed by an Indian Band on its own behalf, and one Interior Department official testified otherwise.[9] However, although an examination of the legislative history does not compel our conclusion, we agree with the decision of the court below that appellee should benefit from the provisions of § 2415.

██ It is clear that if the United States had been the plaintiff here, suing on behalf of the Capitan Grande Band, the applicable limitations period would be the one in § 2415. It is also settled that Indians may sue on their own behalf, with respect to property interests held in trust for them by the United States, even though the United States could have sued independently. Poafpy-

bitty v. Skelly Oil Co., 390 U.S. 365, 88 S.Ct. 982, 19 L.Ed.2d 1238 (1968); Fort Mojave Tribe v. Lafollette, 478 F.2d 1016 (9th Cir. 1973); Skokomish Indian Tribe v. France, 269 F.2d 555 (9th Cir. 1959). Moreover, an Indian band cannot compel the United States to sue on its behalf in such suits. Rincon Band of Mission Indians v. Escondido Mut. Water Co., 459 F.2d 1082 (9th Cir. 1972).

Indian bands and tribes have no assurance that all their claims, or even all their plainly reasonable claims, with respect to trust lands will be pursued in a timely fashion by the United States. Such assurance is precluded by the magnitude of the administrative burdens imposed on the United States by reason of its fiduciary responsibilities, and the inherently discretionary manner in which these responsibilities must be discharged. To provide such assurance would be substantially illusory were such suits barred

---

**8.** According to a Department of Interior report to the Senate in support of the 1972 extension of the limitations period:

> Indians are quite concerned that the present statutory limitation might bar them from recovering damages for many wrongs they have suffered. The Bureau of Indian Affairs and the Solicitor's Office of this Department have not been able to perform the necessary work to identify all of these wrongs and then develop the factual information necessary to get litigation filed. Even with the help of attorneys employed by the various tribes, there are, no doubt, many causes of action which have not been identified. This inability to prosecute the present claims of Indians will work a hardship on tribes all over the country and may result in a considerable loss to Indians through no fault of their own, losses which Indians can ill afford because of their low position on the economic scale.
>
> We believe it is particularly important not to let these unidentified claims lapse because we are on the verge of making substantial progress in discharging our trust responsibilities with regard to Indian resources. . . It would be most unfortunate for many Indian claims to be barred by the statute of limitations at a time when the means for discovering and prosecuting such claims are in the process of being markedly improved. S.Rep.No.92–1253, 92nd Cong., 2d Sess. 4–5 (1972).

**9.** See the following excerpts from the testimony of William A. Gershuny, Associate Solicitor

for Indian Affairs, Department of the Interior, at the Senate hearings on the 1972 amendment:

> Mr. Gershuny. One of the reasons, Senator [Anderson], why it's so essential that the suits be filed, that some claims be filed by the United States, is the possibility that if the tribe in its own name files the suit it would be subject to a shorter statute of limitations than would otherwise be applicable to the Federal Government.
>
> . . . . .
>
> Senator Fannin. . . . The legal services suggest that the words 'United States for or on behalf of' be stricken, on the theory that should a cause of action be extended that they could bring action on their own. Would you comment on this suggestion? Mr. Gershuny. I have not seen that before, but it would seem to me, Senator, that their proposal is based on the erroneous assumption that section 2415 is a statute of limitations which would apply to the tribe itself if it filed its own suit.
>
> We don't read section 2415 that way. I have a lot of difficulty in understanding how section 2415 could be applicable if the tribe itself filed suit.
>
> My first reaction, Senator, is that I think that that proposal is simply bottomed on a false assumption.

Hearings on S. 3377 and H.R. 13825 Before the Subcomm. on Indian Affairs of the Senate Comm. on Interior and Insular Affairs, 92nd Cong., 2d Sess. 19, 23 (1972).

by state statutes of limitations more restrictive than that to which the United States would have been subject had it brought the suit.

Viewed against this backdrop, we adopt with approval the approach of the lower court in its application of the principles we set out in Agua Caliente Band of Mission Indians v. County of Riverside, 442 F.2d 1184 (9th Cir. 1971), cert. denied, 405 U.S. 933, 92 S.Ct. 930, 30 L.Ed.2d 809 (1972). In that case, the plaintiff Indian band was contesting the imposition of a California state possessory interest tax on the lessees of Indian land. Before reaching the merits, this court was confronted with the question of the applicability of the federal "anti-injunction" statute, 28 U.S.C. § 1341, which provides that where a "plain, speedy and efficient remedy" is available in state court the federal courts shall not enjoin the assessment, levy, or collection of any tax under state law. In holding that the plaintiff Indian band could pursue its case in federal court in the face of § 1341, we explained:

An Indian, as the beneficial owner of lands held by the United States in trust has a right acting independently of the United States to sue to protect his property interests. The reasons given in United States v. Livingston, [179 F.Supp. 9 (E.D.S.C.1959), affirmed without opinion, 364 U.S. 281, 80 S.Ct. 1611, 4 L.Ed.2d 1719 (1960)] for exempting instrumentalities of the United States from the operation of 28 U.S.C. Section 1341 are no less cogent when the right to the exemption is asserted by one who properly could be a co-plaintiff of the United States. Id. at 1186.

Analogizing from the treatment of § 1341 by the Agua Caliente court, the court below concluded:

In the instant case as well the plaintiff may sue to protect its property interests independently of the United States. And a fair reading of 28 U.S.C. § 2415(b) indicates a clear Congressional intent to preserve the vitality of actions for trespass to Indian trust lands and conversion of Indian trust property where the plaintiff is the United States. Applying the rationale of Agua Caliente the Court must therefore agree that since the interests sought to be protected by Congress are the same, no matter who the plaintiff may be, the benefits of § 2415 should extend to the present plaintiff in this limited area involving redress for rights in Indian trust lands and property. (R. 170–171).

In a subsequent decision dealing with § 1341 we followed Agua Caliente and permitted an individual Indian and a tribe to proceed in federal court on the ground that they were within the instrumentality doctrine's exception to the jurisdictional bar of § 1341. Moses v. Kinnear, 490 F.2d 21, 25 (9th Cir. 1973). We pointed out that the federal instrumentality doctrine applies "where the United States is not a party plaintiff, if the suit could have been brought by the United States and is in fact brought by parties who could properly be co-plaintiffs with the United States. [Citing Agua Caliente.]" The plaintiffs in Moses v. Kinnear we held were such parties.

### III

In approving the foregoing reasoning of the trial court, we also wish to indicate our approval of the trial court's express refusal to accept one of appellee's contentions viz., that the legislative history of 28 U.S.C. § 1362[10] somehow should be read into § 2415 so as to exempt the Indians from the state statutes

10. 28 U.S.C. § 1362 provides:

The district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States.

With the enactment of § 1362, "arising under" claims brought by Indian groups were no longer subject to a $10,000 amount in controversy prerequisite to federal court jurisdiction. The district court in this case held that the invocation of § 1362 does not dispense with the requirement of properly pleading a federal question.

of limitations. This contention rests upon legislative history that indicates that Congress sought in 28 U.S.C. § 1362 to assure the "same judicial determination whether the action is brought in their behalf by the Government or by their [the tribes'] own attorneys."[11] We agree with the trial court that this legislative history should not be used to expand the scope of another measure. The trial court was correct when it said:

> [S]uch an interpretation [is] unwarranted, where there has been no showing that both . . . 28 U.S.C. § 2415 and . . . 28 U.S.C. § 1362 were considered by Congress either simultaneously or in light of one another. Congress was clearly addressing different problems in the two statutes and therefore its comments in the one instance are not necessarily applicable in the other. (R. 169).

The order denying the motion to dismiss the complaint on the ground that the action is barred by the California statutes of limitations is

Affirmed.

MILLER, Judge (concurring):

I agree with the result reached in the majority opinion on the basis of the persuasive analysis of P.L. 280 (28 U.S.C. § 1360) and determination that it does not apply to controversies such as the instant case, involving, as it does, "trust or restricted property."

Such being the case, the lower court's decision must be affirmed, either because appellee's action is not barred under 28 U.S.C. § 2415 or, as alternatively contended by appellee, because there is no applicable statute of limitations. Ac-

cordingly, it is unnecessary to decide whether 28 U.S.C. § 2415 is applicable.

However, the majority unnecessarily takes up the question of the applicability of 28 U.S.C. § 2415 and then, erroneously in my judgment, decides that it is applicable. Having been persuaded by legislative history in reaching its decision with respect to 28 U.S.C. § 1360, the majority declines to abide by the legislative history, not to mention the plain meaning, of 28 U.S.C. § 2415 and, instead, invokes the federal instrumentality doctrine used by this court in deciding two cases under the federal "anti-injunction" statute (28 U.S.C. § 1341). Agua Caliente Band of Mission Indians v. County of Riverside, 442 F.2d 1184 (9th Cir. 1971), cert. denied, 405 U.S. 933, 92 S.Ct. 930, 30 L.Ed.2d 809 (1972); Moses v. Kinnear, 490 F.2d 21 (9th Cir. 1973).

In Moses v. Kinnear, *supra*, this court held that the federal instrumentality doctrine applies where the United States is not a party plaintiff, if the suit (to enjoin imposition of state excise taxes) could have been brought by the United States and is in fact brought by parties who could properly be co-plaintiffs with the United States, citing *Agua Caliente, supra*. In the latter case, this court held that an Indian, as the beneficial owner of lands held by the United States in trust, had a right acting independently of the United States to sue (to enjoin imposition of a state possessory interest tax) to protect his property interests, citing Poafpybitty v. Skelly Oil Co., 390 U.S. 365, 88 S.Ct. 982, 19 L.Ed.2d 1238 (1968). The court quoted from Federal Indian Law, Dept. of Int., 1958, page 846, that the federal instrumentality doctrine in its application to Indians and Indian property—

---

11. According to the report of the House Judiciary Committee:

> The United States as trustee can initiate litigation involving issues identical to those which would be presented in cases brought under the new section. The enactment of this bill would provide for U.S. district court jurisdiction in those cases where the U.S. attorney declines to bring an action and the tribe elects to bring the action. As is observed in the Department of the Interior re-

port, the tribes would then have access to the Federal courts through their own attorneys. It can therefore be seen that the bill provides the means whereby the tribes are assured of the same judicial determination whether the action is brought in their behalf by the Government or by their own attorneys. H.R.Rep.No.2040, 89th Cong., 2d Sess. 23 (1966), 2 U.S.Code Cong. & Admin. News, p. 3147 (1966).

is founded upon the premise that the power and duty of governing and protecting tribal Indians is primarily a Federal function, and that a State cannot impose a tax which will substantially impede or burden the functioning of the Federal Government.

In *Poafpybitty, supra*, the Supreme Court held that Indian lessors under 25 U.S.C. § 396 (of an oil and gas lease of allotted land held under trust patents issued by the United States) had standing to sue upon a violation of the lease; and it said (at 374, 88 S.Ct. at p. 986) that "the Indian's right to sue should not depend on the good judgment or zeal of a government attorney." In considering the General Allotment Act of 1887 (25 U.S.C. §§ 331–358) and the restrictions on the Indian's control of land under regulations of the Interior Department, the Court stated (at 368-69, 88 S.Ct. at 984):

> In our view, these restrictions on the Indian's control of his land are mere incidents of the promises made by the United States in various treaties to protect Indian land and have no effect on the Indian's capacity to institute the court action necessary to protect his property. In order to fulfill these national promises to safeguard Indian land and at the same time "to prepare the Indians to take their place as independent, qualified members of the modern body politic," Board of County Comm's v. Seber, 318 U.S. 705, 715 [63 S.Ct. 920, 926, 87 L.Ed. 1094] (1943), the allotment system was created with the Indians receiving ownership rights in the land while the United States retained the power to scrutinize the various transactions by which the Indian might be separated from that property. . . . This dual purpose of the allotment system would be frustrated unless both the Indian and the United States were empowered to seek judicial relief to protect the allotment. . . . In *Heckman* [Heckman v. United States, 224 U.S. 413, 32 S.Ct. 424, 56 L.Ed. 820 (1912)], an action brought by the United States to set aside an improper conveyance of restricted land, this Court realized that the allotment system created interests in both the Indian and the United States. "A transfer of the allotments is not simply a violation of the proprietary rights of the Indian. It violates the governmental rights of the United States." [Footnote omitted.]

Thus, in the above cases, it is seen that the federal instrumentality doctrine was applied, in the absence of any indication by Congress to the contrary, to *aid* Indians in the protection of their property rights.

What the majority does here, instead, is apply the federal instrumentality doctrine to *hinder* Indians in the protection of their "trust or restricted property" rights by subjecting their judicial remedies to the periods of limitation imposed by 28 U.S.C. § 2415, in the absence of any indication by Congress that this was intended and in the face of legislative history completely to the contrary.

As shown in footnote 9 of the majority opinion, the Associate Solicitor for Indian Affairs, Department of the Interior (which recommended the amendments), at the Senate hearings on the 1972 amendments to 28 U.S.C. § 2415, stated that it was an "erroneous assumption" that section 2415 is a statute of limitations which would apply to the tribe itself if it filed its own suit. "We don't read section 2415 that way," he said. This is not surprising. The bill (H.R. 13652), which became P.L. 89–505 in 1966 and added section 2415, was introduced as a bill "to establish a statute of limitations for certain actions brought by the Government." 112 Cong.Rec. 5884 (1966). It was so described before passage by the House of Representatives. *Id.* at 12262. Prior to passage in the senate, the manager of the bill, Senator Ervin stated (*Id.* at 14378):

> Mr. President, under existing law the Federal Government is not subject to any statute of limitations, unless there is a special statute so providing in specific instances.

H.R. 13652 would establish statutes of limitations for certain types of actions brought by the Government.

The report on the bill from the Senate Committee on the Judiciary summed up the reason for the bill as follows (2 U.S. Code Cong. & Admin.News 2509 (1966)):

> In recommending this legislation, the committee feels that it will provide a greater fairness as regards private individuals who deal with the Government while adequately providing for the interests of the Government. The Government will be barred from asserting old and stale claims in the courts and the necessity for the early assertion of claims will require increased efficiency in Government claims proceedings.

The amendments with which this case is concerned were added in 1972 by P.L. 92–485. The bill (H.R. 13825) was introduced as a bill "to extend the time for commencing actions on behalf of an Indian tribe, band, or group." 118 Cong. Rec. 8553 (1972). It was so described as reported to the Senate, *Id.* at 33048, and as passed on the consent calendar in the Senate. *Id* at 34437. The report on the bill from the Senate Committee on Interior and Insular Affairs (S.Rep.No.92–1253) contained the following statement (2 U.S.Code Cong. & Admin.News 3593 (1972)):

> The Interior Department in its report on the legislation . . . further stated in its report that—
>
> > the Bureau of Indian Affairs and the Solicitor's Office of the Department have not been able to perform the necessary work to identify all of these wrongs and then develop factual information necessary to get litigation filed.

Prior to passage by the House, the manager of the bill, Mr. Danielson, stated (118 Cong.Rec. 28116-17 (1972)):

> Mr. Speaker, the enactment of the bill H.R. 13825, as amended by the committee, is necessary to make sure that the U.S. Government will have adequate time to identify, prepare, and file certain actions in behalf of Indians. The actions covered by the committee amendment are those which occurred prior to the enactment of a law on July 18, 1966, which for the first time limited the time for actions brought in behalf of Indians by the United States against third parties.

Section 2415 of title 28 of the United States Code as added to that title by the act of July 18, 1966, imposed a statute of limitations on tort or contract suits brought by the United States on its own behalf and in carrying out its trust responsibilities to Indians. . . .

The Interior Department advised the committee that the situation concerning these actions is such that Indians are concerned that the present statutory limitation might bar them from recovering damages for many wrongs they have suffered. The committee has received correspondence from Indian groups expressing this concern over the situation. The Department further stated in its report that the Bureau of Indian Affairs and the Solicitor's Office of the Department have not been able to perform the necessary work to identify all of these wrongs and then develop factual information necessary to get litigation filed. Even with the help of attorneys employed by the various tribes, there are, no doubt, many causes of action which have not been identified. This inability to prosecute the present claims of Indians will work a hardship on tribes all over the country and may result in a considerable loss to Indians through no fault of their own, losses which Indians can ill afford because of their low position on the economic scale. This situation clearly requires enactment of the extension provided in the substitute language proposed by the Department of the Interior. In commenting on the need for the legislation, the Department noted that it is now in position to take effective action in discovering and prosecuting these claims. . . .

As has been stated in the report, the potential claims which would be affected by the amendments of this bill are those which have not been identified. Since these are actions which would be filed by the United States in behalf of Indians, it would, of course be necessary for the Government to develop the factual information in connection with each matter before filing the action.

It is further to be noted that section 2415 appears under Chapter 161 of the United States Code, which is entitled: "UNITED STATES AS PARTY GENERALLY." 1970 United States Code (Supp. II, 1972) at 751. The section itself is shown (at 752) as follows: "§ 2415. Time for commencing actions brought by the United States."

Finally, the majority opinion cites Fort Mojave Tribe v. Lafollette, 478 F.2d 1016 (9th Cir. 1973)[1] in support of the proposition that Indians may sue on their own behalf with respect to property interests held in trust for them by the United States, even though the United States could have sued independently. That proposition, in absence of a contrary intent by Congress, is well established by *Poafpybitty, supra.* However, the holding in *Fort Mojave Tribe, supra,* was premised on a conclusion that Congress intended 28 U.S.C. § 1362 to authorize an Indian tribe to bring suit in federal court to protect its federally derived property rights in those situations where the United States declines to act. Here the majority opinion indicates its approval of the trial court's *express refusal* to accept appellee's contention that the legislative history of that statute should be read into 28 U.S.C. § 2415 because, as the trial court said:

there has been no showing that both . . . 28 U.S.C. § 2415 and . . . 28 U.S.C. § 1362 were considered by Congress either simultaneously or in light of one another. Congress was clearly addressing different problems

in the two statutes and therefore its comments in the one instance are not necessarily applicable to the other.

In view of the foregoing, I conclude that 28 U.S.C. § 2415 does not apply to the instant case.

---

1. Also cited is Skokomish Indian Tribe v. France, 269 F.2d 555 (9th Cir. 1959), which involved an executive order based on a treaty.