**OMAHA TRIBE OF INDIANS et al., Appellants,**

v.

**William A. PETERS et al., Appellees.**

No. 74–1868.

United States Court of Appeals, Eighth Circuit.

Submitted March 31, 1975.

Decided May 9, 1975.

**134**

Daniel H. Israel, Native American Rights Fund, Boulder, Colo., for appellants.

Ralph Gillan, Asst. Atty. Gen., Lincoln, Neb., for appellees.

Edmund B. Clark, Atty., Land and Natural Resources Division, App. Section, U. S. Dept. of Justice, Washington, D. C., for amicus curiae, U. S.

Before GIBSON, Chief Judge, and LAY and ROSS, Circuit Judges.

ROSS, Circuit Judge.

This suit for declaratory and injunctive relief was brought by the Omaha, Santee Sioux and Winnebago Indian tribes and certain tribe members who purported to represent a class of Indians similarly situated (Indians). Defendants are the Nebraska State Tax Commissioner and the Nebraska Department of Revenue (Nebraska), who seek to collect Nebraska taxes on income earned on the tribes' reservations by the Indians, who live on the reservations within the state of Nebraska. The lower court granted summary judgment for Nebraska and the Indians have appealed. We affirm.

In McClanahan v. Arizona State Tax Commission, 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973), the Supreme Court determined that Arizona could not tax the income of Navajo Indians in similar circumstances. Nebraska argues for a different result here under the provisions of 28 U.S.C. § 1360[1] which is not

1. 28 U.S.C. § 1360. State civil jurisdiction in actions to which Indians are parties

(a) Each of the States or Territories listed in the following table shall have jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country listed opposite the name of the State or Territory to the same extent that such State or Territory has jurisdiction over other civil causes of action, and those civil laws of such State or Territory that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within the State or Territory:

| State or Territory of | Indian country affected |
| --- | --- |
| Alaska | All Indian country within the Territory. |
| California | All Indian country within the State. |
| Minnesota | All Indian country within the State, except the Red Lake Reservation. |
| Nebraska | All Indian country within the State. |
| Oregon | All Indian country within the State, except the Warm Springs Reservation. |
| Wisconsin | All Indian country within the State. |

(b) Nothing in this section shall authorize the alienation, encumbrance, or taxation of any real or personal property, including water rights, belonging to any Indian or any Indian tribe, band, or community that is held in trust by the United States or is subject to a restric-

effective in Arizona. We hold that the district court had jurisdiction and that 28 U.S.C. § 1360 permits the imposition of the tax here challenged.

Congress provided in 28 U.S.C. § 1341: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." The courts have also refused to grant declaratory relief when the effect of the judgment would be to avoid the jurisdictional strictures of section 1341. Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 299–302, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943); Miller v. City of Greenville, 138 F.2d 712, 720 (8th Cir. 1943). The Indians do not deny the availability of adequate state remedies;[2] their position, the position of the United States as amicus curiae, and to some extent the position of Nebraska, is that the Indians are not required to exhaust state remedies because of their unique relationship to the federal government, as held in Moses v. Kinnear, 490 F.2d 21 (9th Cir. 1974), and Agua Caliente Band v. County of Riverside, 442 F.2d 1184 (9th Cir. 1971), cert. denied, 405 U.S. 933, 92 S.Ct. 930, 30 L.Ed.2d 809 (1972) [hereinafter, *Agua Caliente*].[3]

In *Agua Caliente*, California was seeking to tax lessees of Indian lands held in trust by the United States. The United States was not a party to the suit and the Agua Caliente tribe had not exhausted remedies available in the California courts. In determining whether the federal courts had jurisdiction, the Ninth Circuit relied on the federal instrumentality doctrine. *Agua Caliente, supra,* 442 F.2d at 1185. The federal instrumentality doctrine, which had been approved by the Supreme Court in Department of Employment v. United States, 385 U.S. 355, 358, 87 S.Ct. 464, 17 L.Ed.2d 414 (1966), establishes that the exhaustion requirement of section 1341 is inapplicable to cases involving taxation of a United States instrumentality. Indian land has been regarded as an instrumentality of the United States, and the government's right to sue to protect such property has often been recognized by the courts. *E. g.,* Heckman v. United States, 224 U.S. 413, 442–445, 32 S.Ct. 424, 56 L.Ed. 820 (1912). *Agua Caliente* held that since the Indian land involved was a federal instrumentality, the Agua Caliente tribe could assert the federal instrumentality doctrine even in the absence of the United States as a co-plaintiff, and compliance with 28 U.S.C. § 1341 was not necessary. *Supra,* 442 F.2d 1186. To reach this conclusion, the Ninth Circuit in *Agua Caliente* examined the seminal case which held that federal instrumentalities were not required to exhaust state remedies under section 1341: United States v. Livingston, 179 F.Supp. 9, 11 (E.D.S.C.1959) (three judge court), aff'd mem., 364 U.S. 281, 80 S.Ct. 1611, 4 L.Ed.2d 1719 (1960). The *Agua Caliente* court found that the rationale expressed in *Livingston* for allowing the United States to assert the doctrine ap-

---

tion against alienation imposed by the United States; or shall authorize regulation of the use of such property in a manner inconsistent with any Federal treaty, agreement, or statute or with any regulation made pursuant thereto; or shall confer jurisdiction upon the State to adjudicate, in probate proceedings or otherwise, the ownership or right to possession of such property or any interest therein.

(c) Any tribal ordinance or custom heretofore or hereafter adopted by an Indian tribe, band, or community in the exercise of any authority which it may possess shall, if not inconsistent with any applicable civil law of the State, be given full force and effect in the determination of civil causes of action pursuant to this section.

**2.** *See* Neb.Rev.Stat. §§ 77–2793 to 77–27,101 (1971).

**3.** *See also* Federal Reserve Bank v. Commissioner of Corporations & Taxation, 499 F.2d 60, 62–64 (1st Cir. 1974) where the court held that the Federal Reserve Bank of Boston did not have to exhaust state remedies under the provisions of 12 U.S.C. § 632, even though the United States was not a plaintiff. Earlier, in United States v. State Tax Commission, 481 F.2d 963, 975 (1st Cir. 1973), the First Circuit declined to apply the principles enunciated in *Agua Caliente* to federal savings and loan associations.

plied with equal force to the Indians; therefore the Agua Caliente tribe was allowed to assert the federal instrumentality exception to 28 U.S.C. § 1341. *Supra*, 442 F.2d at 1186.

The second case relied upon to excuse the exhaustion of state remedies here is Moses v. Kinnear, 490 F.2d 21 (9th Cir. 1974). That case was brought by two Indians to enjoin the state of Washington from imposing excise taxes on cigarette sales on Indian trust lands and an Indian reservation. The United States was not a party. The *Moses* court analogized that case to those in which the United States had sued in conjunction with servicemen to protect them from dual taxation in violation of the Soldiers' and Sailors' Civil Relief Act. In United States v. Arlington County, 326 F.2d 929, 933 (4th Cir. 1964), and United States v. Sullivan, 270 F.Supp. 236, 240 (D.Conn.1967), aff'd, 398 F.2d 672 (2d Cir. 1968), rev'd on other grounds, 395 U.S. 169, 89 S.Ct. 1648, 23 L.Ed.2d 182 (1969), the courts held that the federal government could sue to enforce its national defense policies for the benefit of naval officers, even in the absence of statute. Since the United States could maintain the suits without complying with 28 U.S.C. § 1341, the servicemen in *Arlington County* and *Sullivan* were also excused from exhausting state remedies. Moses v. Kinnear held that these cases under the Soldiers' and Sailors' Civil Relief Act established that the federal instrumentality doctrine applied when the government sued in conjunction with those in whom it had a special interest, in order to enforce important federal policies. *Supra*, 490 F.2d at 25. The Ninth Circuit noted that the United States historically has had a special interest in its Indians which had manifested itself in a policy to protect Indians and Indian property from illegal state taxation; therefore the Indians in Moses v. Kinnear came within the federal instrumentality doctrine exception to 28 U.S.C. § 1341. Finally, Moses v. Kinnear adopted the earlier holding of *Agua Caliente* that the federal instrumentality doctrine could be asserted in the absence of the government by a private party who could be a co-plaintiff of the United States. *Supra*, 490 F.2d at 25.

■ It thus appears that the "co-plaintiff doctrine" established by *Agua Caliente* and *Moses*, and relied upon by the Indians in this case as justification for their failure to exhaust state remedies, is grounded on three propositions: 1) Indian lands are federal instrumentalities, and therefore reservation Indians are not required to exhaust state remedies under the statute when trust, restricted, or reservation lands are involved, according to *Agua Caliente* ; 2) the federal instrumentality doctrine also applies when the government sues on behalf of individuals, including Indians, in whom it has a special interest to vindicate important federal policies under Moses v. Kinnear; 3) the reasons for not requiring the government to exhaust state remedies apply to Indians, and since the United States could be a co-plaintiff, and could have asserted the federal instrumentality exception to section 1341, Indian tribes or individual Indians may assert it as well. The United States has assured us during oral argument that they would have joined as plaintiffs if they had known of the case. Under these circumstances we conclude that the federal court has original jurisdiction in this case, notwithstanding 28 U.S.C. § 1341.

■ Turning to the merits, it is established that under article 1, section 8 of the Constitution,[4] the state has no right to tax this income unless Congress has expressly allowed them to do so. McClanahan v. Arizona State Tax Commission, 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973). Since Worcester v. Georgia, 31 U.S. (6 Pet.) 515, 8 L.Ed. 483 (1832), the courts have recognized the special relationship between the United States and its Indian peoples, frequently de-

---

**4.** "The Congress shall have Power . . . Indian Tribes . . . .." U.S.Const. Art. I, § 8. To regulate Commerce . . . with the In-

scribed as a guardian-ward relationship. United States Department of the Interior, Federal Indian Law 557 et seq. (1958). But since early in our nation's history its Indian policies have been designed to terminate its guardianship over Indian tribes as they are assimilated into society as equals. Worcester v. Georgia, *supra,* 31 U.S. (6 Pet.) at 556; Williams v. Lee, 358 U.S. 217, 220, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959); Omaha Tribe v. Village of Walthill, 334 F.Supp. 823, 836 (D.Neb.1971), aff'd, 460 F.2d 1327 (8th Cir. 1972), cert. denied, 409 U.S. 1107, 93 S.Ct. 898, 34 L.Ed.2d 687 (1973). The statute in question, 28 U.S.C. § 1360, is in furtherance of the policy of ending federal protection of Indians. Congress described its purposes: "First, withdrawal of Federal responsibility for Indian affairs wherever practicable; and second, termination of the subjection of Indians to Federal laws applicable to Indians as such." U.S.Code Cong. & Admin.News, p. 2409 (1953).

■ The statute not only gives Nebraska jurisdiction over civil causes of action to which Indians are parties or between Indians, but more importantly, also gives Nebraska's civil laws of general application the same force on Indian reservations as elsewhere in the state. It seems clear to us that "civil laws" in this context includes everything but "criminal" laws, especially when the statute is read in conjunction with 18 U.S.C. § 1162, which grants criminal jurisdiction to the states, and was passed at the same time. Act of Aug. 15, 1953, Pub.L. No. 83–280, 67 Stat. 588. Thus it appears that Congress intended to make all of Nebraska's civil laws, but those specifically excepted by the statute's terms, applicable to Indians. We do not need to give the words of section 1360 "a more extended meaning than their plain import", Worcester v. Georgia, *supra,* 31 U.S. (6 Pet.) at 581, (McLean, J., concurring), in order to find that "civil laws . . . of general application" embrace the income tax laws of the state.

■ For Indians, as well as for other citizens, exemptions from the tax laws

should be clearly expressed. McClanahan v. Arizona State Tax Commission, *supra,* 411 U.S. at 176, 93 S.Ct. 1257; Mescalero Apache Tribe v. Jones, 411 U.S. 145, 156–157, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973); Squire v. Capoeman, 351 U.S. 1, 6, 76 S.Ct. 611, 100 L.Ed. 883 (1956). In 28 U.S.C. § 1360(b) Congress granted such a tax exemption for Indian property which is restricted or held in trust by the United States. This subsection is instructive because it shows that Congress was aware that state revenue laws were among those which would become applicable to Indians under the provisions of section 1360(a). In our opinion Congress considered this result and determined that it was not desirable to allow the states to tax the properties expressly mentioned in subsection (b). Congress did not express an exemption from other taxation as it easily could have done, and it is not this Court's place to do so now. We hold that Congress has exercised its constitutional power to allow Nebraska to impose taxes upon the income of reservation Indians earned on the reservation by passage of 28 U.S.C. § 1360. Accordingly, we affirm the decision of the district court.